## TATUM *v.* CRABTREE.

[94 South. 449. No. 22775.]

1. MASTER AND SERVANT. *Proximate cause of injury to servant in unsafe place must be shown.*

Although a piece of machinery is defective and thereby renders a servant's place of work unsafe, nevertheless the master is not liable for an injury received by the servant while the latter is engaged in his duties in such an unsafe place, where it is shown that such defective piece of machinery had no causal connection whatever with the injuries received, but that the same is attributable exclusively to another cause.

2. MASTER AND SERVANT. *Rules only required where work is complex.*

The master is not required by law to promulgate rules governing the performance of their duties by his servants simply because the work about which such servants are engaged is dangerous to life or limb, such rules being only required where, in addition to the place being dangerous, the work of the servants is complex, and the conditions which may arise are uncertain and obscure. Where there are no complexities and where the danger is manifest, no rules are required.

3. MASTER AND SERVANT. *Rules for unloading timbers held not required.*

Where the plaintiff and a fellow servant were engaged in unloading heavy timber as manufactured in a sawmill from a roller bed down onto lumber ramps, and, at a time when plaintiff was engaged about his duties down on the lumber ramps only for a short

time, when he and his fellow servants were in full view of each other and each knew what the other was engaged in, the fellow servant with his cant hook negligently threw a heavy piece of timber down onto the lumber ramps while plaintiff was so engaged, without waiting until plaintiff had completed his work, or warning plaintiff of his purpose, and plaintiff was thereby injured by such piece of timber striking him, the master is not liable for such injury because he failed to promulgate rules governing the plaintiff and his fellow servants in the performance of such labor, because such work was not complex or obscure.

4. MASTER AND SERVANT. *Opinion evidence as to employer's duty to promulgate rules held not to raise issue for jury.*

The fact that there was evidence in such case to the effect that the master should have promulgated rules for the government of plaintiff and his fellow servant in the performance of their labor did not raise an issue for the jury, because such evidence is mere opinion evidence, and is entitled to no weight whatever where the other evidence showed without conflict that the duties performed by plaintiff and his fellow servant were not attended with any uncertainty or obscurity, and that it was manifest that both plaintiff and his fellow servant knew exactly how to avoid the injury to plaintiff, and that therefore any rule which might be promulgated could only inform them of what they already knew.

APPEAL from circuit court of Forrest county.

HON. R. S. HALL, Judge.

Action by Amos Crabtree against W. S. F. Tatum. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

*Stevens & Heidelberg*, for appellant.

An examination of page 573 of 18th Ruling Case Law will show that it is only where the employer's work is complex and dangerous that he is ever required to adopt any rules, and an examination of the authorities upon which the doctrine that it is necessary to adopt any rules under any circumstances, is founded will disclose that in almost every instance the employers were engaged in the complex and highly dangerous business of operating a railroad. *Boyer* v. *Eastern Railway Company*, 12 Amer. Negligence Reports, 496. Another case very similar to the

case at bar is that of *Olsen* v. *North Pacific Lumber Company*, decided by the circuit court of appeals of the ninth circuit and reported in 100 Fed., page 387. *Eley* v. *N. Y. C. & H. Railroad Co.*, 88 Hun., 323; *Morgan* v. *Hudson River Ore. & I. Company*, 133 N. Y. 666.

Whether or not the evidence is sufficient to show a case in which the duty to make rules rested on the employer, is a question of law for the court. *Texas & New Orleans Railroad Company* v. *Echols*, 87 Tex. 339; *Larsen* v. *O'Rourke Engineering Construction Co.*, 102 C. C. A. 51; 178 Fed. 541; *The Punkowski* v. *Newcastle Leather Co.*, 4 Penn. (Del.) 544, 57 Atl. 559; *Jemnienski* v. *Lobdell Car Wheel Company*, 5 Penn. (Del.) 385, 63 Atl. 935, holding no rules required for controlling the running of small cars on railroad in manufacturing plants. *American Bridge Company* v. *Valente*, 7 Penn. (Del.) 370, 73 Atl. 400, holding no rules required to protect labor painting iron columns on car from injuries by other columns being loaded by fellow servants. *Knickerbocker Ice Company* v. *Smith*, 45 Ind. App. 445; 91 N. E. 28, holding, no rules necessary in filling and dumping steam shovel. *McCafferty* v. *Maine C. R. Co.*, 166 Me. 284, 76 Atl. 865, holding no rule necessary where steam fitter was at work on track of traveling crane and was injured by crane being moved against him. *Parmaleau* v. *International Paper Company*, 75 N. H. 69, 71 Atl. 31, holding no rule required for moving cars by hand. *Wagner* v. *New York Central & St. Louis Railroad Company*, 76 App. Div. 552, 78 N. Y. Supp. 696, holding no rules required for anchoring derrick cars. *Palmieri* v. *S. Pearson & Son*, 128 App. Div. 231, 112 N. Y. Supp. 684, holding that no rules were required for moving steam crane. *Forey* v. *Syracuse B. & N. Y. R. R. Co.*, 12 N. Y. S. 198, holding no rules required for unloading gravel from cars. *Galvin* v. *Brown & McCabe*, 53 Or. 598, 101 Pac. 671, holding no rules necessary in unloading slings for putting lumber into vessels. *Moore Lime Co.* v. *Richardson*, 95 Va. 336, 27 S. E. 334, holding no rule necessary for unloading and moving cars by hand. *Jackson* v. *Wheeling*

*Terminal Railroad Company,* 65 W. Va. 415, 64 S. E. 450, holding that company operating small terminal road not bound to promulgate rules governing the running of trains. 3 Labatt's Master and Servant (2 Ed.), sec. 1115, page 2953.

So in the case at bar it was not necessary for the master to adopt or promulgate a rule for the purpose of regulating an act which in itself was negligent. It certainly must be apparent to the court that the use of the movable skids testified about did not proximately contribute to the plaintiff's injury and yet the court refused the following instruction asked by the defendant.

The court instructs the jury that the movable skids testified about, regardless of their condition or safety, were not the proximate cause of the plaintiff's injury, and the jury is not authorized to find a verdict for the plaintiff because of the use of said skids. It certainly is true that if the thing which caused the plaintiff's injury in this case was the negligent act of Boles, his fellow servant, in turning the stick of timber off on him at a time when he was fixing the movable skid, the jury should have found a verdict for the defendant, and yet the court refused the defendant the following instructions: "The court instructs the jury for the defendant that if you believe from the evidence that the plaintiff Crabtree and witness Boles were working together and that they or either of them went down on the ramps for the purpose of fixing the movable skids and that before the plaintiff had completed his work his fellow workman Boles took his peavy and turned the stick of timber off on him, then it is your sworn duty to find for the defendant."

Even if there had been any conflict in the testimony as to how the stick of timber happened to leave the roller bed and fall on the plaintiff and cause his injury, it is certainly true that if the stick of timber was turned off by Boles, the defendant was in no way liable and yet the court refused the defendant the following instruction:

"The court instructs the jury for the defendant that if you believe from the evidence in this case that the witness Boles turned the stick of timber off of the roller bed and that it fell on the plaintiff and caused his injuries, then you must find for the defendant regardless of every other fact or circumstance in this case."

As we have heretofore tried to show the court in this brief, the condition of the roller bed could not possibly have contributed to the plaintiff's injury because it affirmatively and without contradiction appears from the testimony that the stick of timber did not fall off of the roller bed but was deliberately turned off by means of a peavy in the hands of a fellow servant, and yet the court refused the following instruction asked by the defendant: "The court instructs the jury for the defendant that the condition of the roller bed was not the proximate cause of the plaintiff's injuries. The jury is not authorized to find a verdict for the plaintiff in this cause because of any improper condition of the roller bed."

Another instruction which was refused by the court, the refusal of which, in view of the facts of this case, we submit was error, read as follows: "The court instructs the jury for the defendant that if they believe from the evidence that the stick of timber which hurt plaintiff had left the live rolls and had been placed into position on the dead rolls and that then Crabtree undertook to put a skid in place down on the ramp below and while so engaged Boles turned the stick of timber off the rolls and onto the ramps, resulting in Crabtree being caught and hurt, then the defendant is not liable to Crabtree for his injuries and in such case the jury must under their oaths find for the defendant."

However, we repeat, that in our humble judgment there was no failure of duty on the part of the defendant in this case, and the case should not have been submitted to the jury at all, but that this court should now reverse the judgment of the lower court and render judgment in favor of the appellant.

*Currie & Currie* and *J. W. Cassidy,* for appellee.

Section 1 of chapter 156, Acts of the legislature of the state of Mississippi, 1914, page 200, reads as follows: "Section 1. Be it enacted by the legislature of the state of Mississippi, that in all actions for personal injury to all employees, and in all actions where such injury results in death, such employee shall not be held to have assumed the risks of his employment in any case where such injury or death results in whole or in part from the negligence of the master; except as to conductors, or locomotive engineers, in charge of dangerous or unsafe cars or engines voluntarily operated by them."

Section 2, chapter 312, Laws 1920, in effect March 25, 1920, section 503, 3rd Vol., Hemingway's Code, session Laws 1917, 1918, 1920, reads as follows: "Sec. 2. All questions of negligence and contributory negligence shall be for the jury to determine."

There are two things fixed by these statutes: (a) The liability of the master "in any case where such injury or death results in whole or in part from the negligence of the master;" (b) the right of the jury to determine the question of negligence. The foregoing are plain statutory provisions.

Under the facts of this case the very place where the plaintiff, appellee, was required to work and the very character of the work which he was required to do, were so palpably dangerous as to render applicable even the doctrine *res ipsa loquitur.* The appellee was put to work by the appellant in a place where the appellant knew large timbers would necessarily fall or be thrown while the appellee was necessarily engaged in doing his work. Grosser negligence than this could scarcely be conceived of. It was and is gross negligence. The appellant fixed—built—this veritable death trap and knowingly put the appellee to work in it. This is not all. There is abundant proof in the record that the appellant did not promulgate, publish and enforce any rules regulating the doing of this dan-

gerous work in this dangerous place whereby to protect the appellee from the known danger. The appellee testified there was no rule or regulation. Hartfield, a witness for the appellee, who worked for the appellant on the same ramp testified there was no rule or regulation. W. S. F. Tatum, the owner of the mill, the defendant in the case and the appellant, himself, testified that he had given no instructions either one way or the other. After Frank Tatum and an employee by the name of Johnston had testified they were recalled and further examined by the appellant for the purpose of undertaking to prove the promulgation of rules for doing the work. It is submitted (a) that their testimony, if given full faith and all the effect it is entitled to, does not satisfy the legal requirements or meet the emergencies of the known dangers to be guarded against; (b) but there was a direct conflict in their testimony and the testimony of the appellee and his witness, an issue of fact and the jury determined that issue in favor of the appellee.

Again, the appellee and some of his witnesses testified that the live rollers in the roller bed were kept moving and bringing the lumber to be unloaded at the ramp which he was required to get down into this death trap to adjust the skids. That this was the custom. There is some testimony to show that the rollers were sometimes stopped when the lumber or timber jammed. The record also shows that this was the last piece of timber which came down and was unloaded. But these facts cannot in law defeat the appellee or excuse the appellant. The very manner and method of doing the work, the customary manner, the manner designed and the manner in which it was always done necessarily rendered the place dangerous and made necessary the promulgation and enforcement of rules and regulations for the safety of the appellee. Emergencies only added to the necessity for the rule. Crabtree, the appellee, testified that the first notice he had was when the timber fell upon him, or when he saw it coming when it was too late for him to escape.

The appellant introduced testimony in an effort to show that the live rollers were always stopped when it was necessary for the appellee to get down in this place of danger and fix up the skids, but the testimony of the appellee and his witnesses was in direct conflict with this testimony introduced by the appellant. This made an issue of fact for determination of the jury and the jury determined it in favor of the appellee.

The statute, section 2, chapter 312, Laws 1920, section 503, Third Volume, Hemingway's Code, reading as follows: "All questions of negligence and contributory negligence shall be for the jury to determine," required the court to submit these issues of fact to the jury for its determination and the jury determined them in favor of the appellee.

The appellant makes complaint of the instructions. When the court reads the instructions, it will see that the appellant received all and was offered all and more than he was entitled to in the instructions. The jury was plainly and repeatedly instructed at the request of the appellant that if they believed from the evidence in the case that the appellee was injured because of the negligence of Boles, his fellow servant, he could not recover.

The appellant had no right to instructions from the court, such as were requested and modified by the court, withdrawing from the jury the question of the negligence of the appellant in failing to promulgate rules for the doing of this known dangerous work. The modifications were necessary and designed to submit that issue to the jury and were correct as modified, at least more so than as requested, and the appellant, and no one else, is to blame for his failure or refusal to use the correct law as offered by the court.

The negligence proved in this case, and the jury believed the testimony of the appellee and found for him, is so gross that it is both unnecessary and useless to discuss it. It would have been a travesty upon facts, law and justice to withdraw this case from the jury by peremptory instructions as requested.

ANDERSON, J., delivered the opinion of the court.

Amos Crabtree, the appellee, sued appellant, W. S. F. Tatum, in the circuit court of Forrest county for damages suffered by him on account of his right side being mashed and bruised and his left leg broken between the hip and the knee caused by the alleged negligence of appellant, his employer, in failing to furnish him a reasonably safe place to work. There was a trial resulting in a verdict for appellee in the sum of three thousand dollars, upon which the court rendered a judgment for that amount, from which appellant prosecutes this appeal.

The principal assignment of error, and the only one necessary to consider, is that the court should have directed a verdict for appellant on the ground that the evidence did not tend to establish liability on the part of appellant.

Appellee's declaration contains four counts, upon the first of which the trial court held, for reasons unnecessary to state, that under the evidence there could be no recovery. The three counts upon which the trial was had charge in substance that appellant was the owner of a sawmill plant in the operation of which there were saw carriages, live rolls, dead rolls, lumber ramps, and movable skids; that said sawmill plant was large, and daily manufactured a great quantity of lumber, requiring the labor of many employees; that appellant had in his employ one Boles, a fellow servant of appellee, whose duty it was to assist appellee in taking the manufactured lumber from the roller bed and throwing or rolling it down on the lumber ramps so as to make ready for its loading and shipment on railroad cars; that movable skids were used in the process of throwing or rolling the lumber down from the roller bed onto the ramps, which skids sometime became misplaced, necessitating their readjustment by appellee, that being a part of his duties; that on the occasion of appellee's injury he was down on the ramps engaged in replacing the skids when a large piece of timber about one foot square, thirty feet in length, came out from the mill on the roller bed and

was by said fellow servant, Boles, thrown down on the ramps, striking appellee and causing the injury complained of. In each of the three counts of the declaration on which the cause was tried the ground of liability charged is that appellant failed to furnish appellee a reasonably safe place to work. In the second count it is charged that, although the immediate cause of the injury was the act of the fellow servant, Boles, in turning the piece of timber off of the roller bed onto the ramps before appellee had replaced the skids, nevertheless the place where appellee was engaged in his duties was an unsafe place, in that appellant had negligently failed to adopt rules governing appellee and his fellow servant, Boles, in the performance of their duties with a view of their safety from injury at the hands of each other. In the third count the place is charged to have been unsafe in that appellant had allowed the roller bed to become so out of repair that it leaned or slanted toward the ramps, which resulted in the timbers at times prematurely falling from the roller bed onto the ramps, and in that the skids onto which the timbers were turned or thrown on reaching the ramps would become misplaced because not properly fastened, necessitating their readjustment by appellee, in performing which duty his back would be turned toward the roller bed and his fellow servant, Boles, and that appellee was so situated and engaged when injured, which injury was caused by the defective skids in connection with the fact that the leaning roller bed pre· cipitated the piece of timber down onto the ramps before appellee finished the duty in which he was engaged. The fourth count is substantially the same as the third.

The evidence shows without conflict the following facts: When the lumber was manufactured by appellant's mill, it was carried out on roller beds, from which it was turned ·or thrown down onto the movable skids and lumber ramps, substantially in the manner averred in the declaration. From time to time the skids would become misplaced. It was the duty of the appellee to readjust them. On the occasion when appellee was injured he was down on the

ramps adjusting the skids which had become misplaced. While engaged in such duty he was only a short distance from his fellow servant, Boles, each of whom were in full view of the other. In replacing the skids appellee's back was turned toward the roller bed and his fellow servant, Boles. While appellee was engaged in that duty, there came out on the roller bed a piece of timber about one foot square, thirty feet in length, to be thrown down on the ramps at which appellee and said Boles were at work. Without waiting for appellee to complete the readjustment of the skids, and without giving him any warning of his purpose, the fellow servant, Boles, with his cant hook, turned the piece of timber off of the roller bed onto the ramps, which rolled down against appellee with great force, mashing and bruising his right side and breaking his left leg between the hip and knee. The evidence shows that to so throw the piece of timber down on the ramps under the circumstances without warning to appellee on the part of the fellow servant, Boles, was most dangerous. Some of the witnesses stated that it was as dangerous as being in front of an onrushing locomotive. The fellow servant, Boles, gave as his only excuse for his conduct that he simply overlooked his duty to warn appellee or see that he was out of danger before throwing the timber down on the ramps. In other words, it is shown beyond question and without conflict in the evidence in this case that the proximate cause of the injury to appellee was the fault of his fellow servant, Boles.

If the roller bed was defective in that it leaned toward the ramps, as appellee's evidence tended to show, this was wholly immaterial, because the piece of timber in question did not by reason of that condition fall off of the roller bed prematurely. Therefore such defect, if it existed, had no causal connection whatever with the injury.

The appellee undertook to show that the place where he was engaged at work was unsafe because appellant could and ought to have provided movable skids which would not have become misplaced and thereby necessitated their re-

adjustment by him. But on cross-examination appellee admitted that the movable skids in use were the best-known method by which the timber could be thrown from the roller bed onto the ramps.

Was the promulgation of any rule or regulation by appellant for the safety of appellee required under the facts of this case? A master is not required by law to promulgate rules governing the performance of their duties by his servants simply because the work about which such servants are engaged is dangerous to life or limb; it is only where, in addition to being dangerous, the work of the servants is also complex, and the conditions which may arise are uncertain and obscure. If the work is simple in character and free from complexities, the master is under no obligation to adopt rules. In other words, where the danger is apparent to all, and the duty of the servants to avoid such danger is manifest, no rules are required. 18 R. C. L. 573, 574, section 80.

In *Boyer* v. *Eastern Ry. Co.*, 87 Minn. 367, 92 N. W. 326, it is held that the ordinary labor of unloading logs from a freight car is not attended with extra hazards nor involved in such complicated or obscure conditions as to require the master engaged therein to formulate rules for the conduct of his servants in the performance of their labor. In that case the servants were engaged in unloading logs seventy feet long from cars, which was done by means of skids; one set of skids leaning from the car to the ground and another set from the ground still further outward.

In *Olsen* v. *Northern Pacific Lumber Co.*, 100 Fed. 384, 40 C. C. A. 427, decided by the circuit court of appeals of the ninth circuit, the master was engaged in the operation of a sawmill, and among other employees was a sawyer who had charge of operating the carriage. The plaintiff, Olsen, was an off-bearer on the carriage, and was hurt because of the negligent act of the sawyer who started the carriage and caused it to run against the plaintiff when he should have waited until the plaintiff had gotten into a position of safety. The sawyer and plaintiff, his off-bearer, were therefore fellow servants. The plaintiff

sought to hold the master liable because the latter had not adopted any rules or regulations with reference to the duties of his servants in that situation. Touching this question, the court said:

"The contention that the defendant should have directed Rearick as sawyer by rules and regulations to observe care toward the plaintiff as off-bearer cannot be sustained. To observe such care was essentially Rearick's duty, assumed in and about his employment. The business was not complex. There was no evidence that it was customary in saw-mills to direct employees by special rules, and it could not be so held as a matter of law or submitted to the jury to decide without evidence. In complex employments like railroads, rules have been held to be necessary. To require them in the simpler employments would only embarrass them without useful effect."

Under the undisputed facts in this case there was no complexity whatever in the situation appellee and his fellow servant, Boles, were in when the injury occurred. The danger to appellee in the conduct of his fellow servant, Boles, in throwing the log down on the ramps while appellee was engaged in adjusting the skids was manifest. It was an act about which there could be only one opinion. No rule or regulation was necessary. There was only one course to pursue, which was apparent, and that was for the fellow servant, Boles, to either wait until appellee had readjusted the skids before throwing the timber down, or warn appellee of his purpose in time for the latter to reach a place of safety. The only reasonable rule the appellant could have promulgated was simply that, and nothing more, and, when appellant had done so, appellee and his fellow servant, Boles, would only have been informed of what they already knew.

Appellee, to sustain his contention, relies on the *Coast Ship Co.* v. *Yeager,* 120 Miss. 152, 81 So. 797. It was held in that case that a servant, while working on the inside of the hull of a ship and in ignorance of the fact that boring with an auger was being done by employees from the out-

side at the point at which he was working, who was struck
by the auger being driven through the side of the ship by
such employees on the outside, and it appeared that the
employer could have feasibly adopted and used a system
of giving notice to the employee on the inside of the place
of boring, that the employer was negligent in not adopting
such rules, and therefore the failure to do so resulted in
the employer not providing a safe place for such servant on
the inside to work. It is apparent at a glance that that
is a very different case from the present case. In that case
the servant on the outside of the ship who caused the
injury was ignorant of the danger of the servant on the
inside who was injured, and the latter was ignorant of and
had no means of ascertaining the danger to which he was
subjected. In the case here appellee and his fellow servant,
Boles, were in full view of each other; each by the exercise
of the simplest caution could have seen what the other was
doing; both knew that for the fellow servant, Boles, to
turn the piece of timber down on the ramps while appellee
was replacing the skids was most dangerous to the latter.
We therefore have a case here where the place was entirely
safe, provided the fellow servant, Boles, performed his
duty. On the contrary, it could only be unsafe if he failed
to perform his duty; in other words, a case where appellee's
place of work was reasonably safe and he was injured alone
through the negligence of his fellow servant, Boles.

It is argued, however, on behalf of appellee that some
rule was necessary for the government of appellee and his
fellow servant, Boles, in the performance of their duties;
at least that it was a question for the jury whether such
rule or regulation was necessary because the witness Frank
Tatum, superintendent of appellant's mill plant, admitted
that the work they were engaged in was dangerous, and
such a rule was necessary. The testimony of this witness,
however, was a mere matter of opinion. Under the facts
of this case it is entitled to no weight whatever as evidence.
How could any rule have made appellee's place of labor any
safer? Without any rules the fellow servant, Boles, knew

exactly what his duty was.. He admitted that on the witness stand. All persons would agree at once without any rule precisely what course the fellow servant, Boles, ought to have pursued. What use is there for a rule requiring a person not to do a thing which is manifestly eminently dangerous to the life or limb of another? We see none. It was a situation without any complication. There was no room for opinion evidence.

It follows from these views that the trial court should have directed a verdict for appellant.

<em>Reversed, and judgment here for appellant.</em>