EASTMAN GARDINER HARDWOOD CO. *v.* CHATHAM.

(Division A.   Jan. 1, 1934.   Suggestion of Error Overruled Jan. 15, 1934.)

[151 So. 556.   No. 30930.]

C. S. Street, of Laurel, and T. J. Wills, of Hattiesburg, for appellant.

Jeff Collins and F. B. Collins, both of Collins, for appellee.

Argued orally by **T. J. Wills**, for appellant, and by **Jeff Collins**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

Hugh Chatham recovered a substantial verdict against the appellant, Eastman Gardiner Hardwood Company, for personal injuries sustained by him, and, from the judgment entered thereon, an appeal is prosecuted here.

The declaration charged that the defendant owed plaintiff certain duties, among which was to furnish him reasonably safe tools and appliances with which to work and a reasonably safe place in which to work, and to have its work done in a reasonably safe way and not to require plaintiff to do his work in a dangerous way. The appellee claims that all of these duties and obligations were violated by appellant.

The appellee was the only witness who testified in the case, and at the conclusion of his testimony the appellant moved to exclude the evidence and requested the court to peremptorily instruct the jury to find a verdict for it,

which was refused. The appellee testified that he had been working for the defendant, the hardwood mill, for more than a year, running a re-saw, a machine used for the purpose of ripping up the large planks after they came from the band saw; that the re-saw was fed through four upright rollers, similar to feeding cane into a cane mill; that, in the re-saw process of manufacturing the lumber, splinters and accumulation of trash would gather around the rollers and impede the work, making some boards thin and some thick and irregular and undesirable; that it was his duty to feed the re-saw and to remove accumulation of trash, bark, and splinters from the rollers, and for this purpose he had a stick about thirty inches long, but sometimes this stick did not serve the purpose. Appellee was an experienced sawmill man and had worked for more than thirty years around a sawmill. He also testified that the operation of removing the trash and splinters was a dangerous one. On three occasions he had flagged the foreman, who, in turn caused the engineer to stop the mill in order for him to remove the accumulation of splinters; he said that the foreman who directed him came to him and told him to keep the mill running. He testified that at times he had removed the splinters and trash with his hands while the machinery was in operation, but more often he used the stick for cleaning. He further testified that the foreman had ordered him, when the lumber was uneven because of trash in the rollers, to keep the trash and accumulation from around the rollers. On the occasion when he was injured and lost several fingers, a splinter hung beneath the rollers; he stuck his hand within six inches of the rapidly revolving saw and undertook to remove the splinter, which the stick would not remove, and his hand was thrown against the saw by the splinter. He said the master knew that he had used his hands and the stick to remove the obstructions.

The appellee does not point out in a satisfactory way the precise negligence of the master upon which he seeks to uphold the verdict and judgment in this case, but we apprehend that he relies upon the statements made by the foreman—to keep the trash and other accumulation out of the rollers and keep the mill moving—as directions to him to do the work in the manner in which he did it on this occasion; that is, by putting his hand in close proximity to the rapidly revolving saw. We do not think the language which the witness attributed to the foreman is capable of the construction placed upon it by the witness and by his counsel. It was not an order for him to do anything but perform the duties which he had assumed to perform, that is, to keep the mill in operation and to have it produce the lumber in the manner intended by having the accumulation of trash removed from the rollers. There was no direction for him to put his hand in this highly dangerous close proximity to the rapidly revolving saw; he voluntarily suffered his injury by placing his hand in a palpably unsafe and dangerous place. There was no threat to discharge him, although he designates the language of the foreman as being a complaint and a threat to discharge him. The language is not susceptible of that construction and meaning. Counsel argue that because the foreman told the servant to keep the mill moving, the language was equivalent to telling him that he could not stop it in order to perform the dangerous duty of removing the accumulation of trash. It is not the interpretation of the witness that controls, it is the reasonable and fair inference to be drawn from all the language used. There was no threat either express or implied to discharge the servant; neither was there any direction to him as to how he was to perform the duty. He was experienced; he certainly knew and appreciated the danger, and when he voluntarily placed his hand in this position he assumed the consequences resulting from his own reckless act.

No kind of negligence on the part of the master can be deduced from the facts of this case. Every person of normal mind knows that there is danger in the operation of a sawmill at all times while the saw is in motion, and the general rule is that the servant assumes the risk and peril of that danger and the dangers ordinarily incident to the employment. He does not, under our statute, section 513, Code 1930, assume any of the consequences which may be chargeable to the negligence of the master.

Appellee does not complain of the adjustment of the saw, or that it was any different from any other re-saw installed in such manufacturing plants. He cites the case of Goodyear Yellow Pine Co. v. Mitchell, 168 Miss. 152, 149 So. 792, but the case has no application here. In that case the servant was told by the representative of the master, when the servant was standing idle while his helper was attending to some duty: "Hell-fire, we can't shut this plant down for one man, get those things back there and stack them up, or go to the office and get your time." The court said that this language meant that one man was ordered to do the work which required two men, and that in lifting a package too heavy for one man he was injured because he was not furnished sufficient help to do the work required of him, and that the proximate cause of the injury was the command of the foreman, which we have quoted, and the inference that, if he failed to do as ordered, he would be discharged. The court further said that a servant is not free when the disobedience of the master means the loss of his job. The case is not controlling or persuasive here. There is nothing in the record to show that there was anything unusual or abnormal about the place in which the servant in the case at bar was required to work. No kind of negligence can be drawn by fair and reasonable inference from the record in this case.

It is to be regretted that this servant has lost several fingers and is maimed for life, but the record clearly dis-

closes that he sustained his injury by reason of his own folly. If negligence were to be imputed to the master because the place is dangerous, in all cases of injury the master would be held liable. Danger is not negligence. There is no liability in this case; the peremptory instruction should have been given the appellant.

Reversed, and judgment here for the appellant.