EAGLE COTTON OIL CO. *v.* PICKETT.

(Division A. March 30, 1936.)

[166 So. 764. No. 32015.]

Gilbert & Cameron, of Meridian, for appellant.

**Williamson & Clayton,** of Meridian, for appellee.

**Cook, J.**, delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of Lauderdale county awarding the appellee damages for

personal injuries alleged to have been sustained by him as a result of the negligence of the appellant.

The declaration charged that the appellee was employed by the appellant to work at its fertilizer factory, and that on the occasion of his injury, he and other employees were engaged in breaking up and removing a large pile of material to be used in the manufacture of fertilizer, and which had been stored in a large bin or compartment in one of appellant's buildings. The negligence charged was (1) the failure of appellant to exercise reasonable care to furnish appellee a reasonably safe place to work; (2) the negligent failure of appellant to properly supervise the work and provide warnings of impending dangers connected therewith; (3) the negligent failure of appellant to adopt reasonable rules and regulations for carrying on the work; and (4) the negligence of the master in adopting an unsafe and dangerous method of doing the work when a safe method was practicable and available. The method adopted for the performance of the work in which the appellee was engaged at the time of his injury was fully described in the declaration and will sufficiently appear herein in the statement of facts.

Appellant is engaged in the manufacture of cotton-seed products and fertilizer, and in the manufacture of fertilizer there is used, among other ingredients, a mixture of sulphate ammonia and phosphorous acid which is called "base." This base is mixed in a hopper and then carried in wheelbarrows to bins in which it is piled. When this base is first prepared it is soft and pliant, but in the bin in which it is stored it becomes, in the course of time, compact and firm, not hard like a rock, but too compact to handle with shovels only, and consequently picks are used in loosening and tearing it down. The particular bin in which the appellee was injured was thirty by fifty feet in size, and the base was piled therein to a height varying, according to the estimates of several

witnesses, from seven to fourteen feet. After this base has "set" and hardened, it is ready to be used in the manufacture of fertilizers, and it is then moved in wheelbarrows to a hopper for mixing with other ingredients. In removing this base it is necessary for laborers to dig into the pile or mass with picks so as to loosen it and cause it to crumble on the floor, so that it can be moved with shovels and placed in wheelbarrows.

The appellee had been employed in this factory for eight years and during each fertilizer season had been engaged in removing base from the bins, the method employed throughout that time being the same as, or similar to, that used on the day he was injured. The testimony is to the effect that when this base is loosened by the use of picks it crumbles and falls to the floor, sometimes in large quantities. Frequently when this mass falls it comes down in large clods or chunks, some of which break up when they strike the floor, while others are of such density as to require the use of picks to break them up. Some of these clods weigh as much as two hundred pounds or more, and when this mass falls from above, and especially from the top of the pile, it is necessary for the laborers to hurry out of the way to avoid injury from the falling mass. In moving the pulverized mass from the floor to the mixing hopper, a platform scale set to weigh a fixed amount was placed beside the pile of base. Wheelbarrows were rolled onto this scale, loaded to the required weight, and then rolled to the mixer.

On the occasion that the appellee was injured there were six laborers engaged in moving "base" from the bin, four wheelbarrow men and two pickers. Appellee was using a wheelbarrow and had nothing to do with breaking up the mass or pile. The testimony is that the pickers began at the bottom of the pile and undermined it to a depth of five feet and for a length of about eight feet. The appellee placed his wheelbarrow on the scales and loaded it with a shovel, the pickers in the meantime hav-

ing moved out of his way and begun picking into the mass beyond this excavation. Appellee testified that in moving his wheelbarrow off the scales it was necessary to turn his back to the pile and stoop over to grasp the handles of the wheelbarrow, and that as he did so a large mass of base broke loose from about twelve feet above and fell on him, thereby causing the injury complained of. There was also testimony to the effect that the caving of this pile was caused by the undermining; that the foreman in charge of the work directed that the pile be broken up in that way; that this method of doing the work had been in use in that plant for years, and that it was the usual and customary method in use in other standard fertilizer factories.

The first assignment of error is based upon the refusal of a peremptory instruction requested by appellant, and for that reason we have endeavored to so state the evidence as to give a reasonably clear picture of the place of work and the method of its performance. The testimony of appellant's foreman was that the laborers were instructed to use caution to avoid injury from the crumbling mass, and that it was customary for any of the employees who observed that the pile was on the point of breaking up and falling to shout a warning. This foreman also testified that the pile was only from six to eight feet in height, and appellant's witnesses testified that the usual and customary method of breaking up piles of base of that height was by overhand strokes of the picks beginning at or near the top, and that there was no occasion for undermining piles of that height. If, therefore, the pile here in question was undermined to the extent testified to by appellee's witnesses, it tends to support their testimony that the pile of base was from ten to twelve feet high. It is admitted by appellant's witnesses that there is danger from these falling chunks, especially when the pile is high, and when it is remembered that appellant's foreman testified that many of the

falling chunks weighed as much as two hundred pounds and sometimes had to be broken up with picks after they fell to the floor, it is readily conceivable that serious injuries might result from this falling mass. However, danger does not create liability, but the failure of the master to exercise ordinary or reasonable care to protect his servants from the dangers necessarily incident to their employment does create liability, and we think that under the facts here in evidence it was the province of the jury to say whether or not, in adopting a plan or method of performing the work, and in providing a safe place to work, the appellant exercised reasonable care. The case of Buckeye Cotton Oil Co. v. McMorris, 172 Miss. 99, 158 So. 799, is not in conflict with this view. In that case the only charge of negligence was in the manner of stacking the sacks of cottonseed meal, one of which fell from the top of a high stack and injured the plaintiff. There was no evidence of negligence in the manner of stacking the sacks, and it was held that the evidence showed that the injury was caused solely by the negligence of the appellee and a fellow servant in tearing down these stacks.

The appellant next assigns as error the granting of several instructions requested by appellee. The first instruction complained of informed the jury that it was the nondelegable duty of the master before directing the work to be done to see that the place of work was in a reasonably safe condition. This instruction is erroneous in that it imposes upon the master the absolute duty to provide a reasonably safe place to work, while a master is only required to exercise reasonable care to provide a reasonably safe place to work. In view of the fact, however, that other instructions correctly stated the rule as to the degree of care required of the master, it may be that the error in this instruction, standing alone, would not require a reversal.

The second instruction complained of, which appears on page 189 of the record, told the jury, among other things, that the "plaintiff did not assume the risk of being injured as the result of the negligence, if any, of the defendant in failing to furnish him a reasonably safe place to work; that the plaintiff did not assume the risk of being injured as the result of the negligence, if any, of the defendant in failing to properly supervise the work," and that the "plaintiff did not assume the risk of being injured as the proximate result of the negligence, if any, of the defendant in employing a defective system or method or a dangerous system or method of carrying on the work." This instruction is erroneous in that it assumed as a fact that the master had employed a defective system or method of doing the work and had failed to furnish a reasonably safe place to work.

The appellant next complains of two instructions which informed the jury that one of the primary and absolute duties of the master was to prescribe reasonable and proper rules and regulations for the performance of the work, and to properly supervise the same. Under the facts in this record, these instructions were erroneous. In the case of Tatum v. Crabtree, 130 Miss. 462, 94 So. 449, it was held that a master is required to promulgate rules governing the performance of their duties by its servants only when, in addition to being dangerous, the work of the servants is complex, and the conditions which may arise are uncertain and obscure. Under the evidence in this case, the work was not complex, and the only uncertainty was as to when the danger might arise.

Appellant also assigns as error the granting of the following instruction: "The court instructs the jury for the plaintiff that if you believe from the preponderance of the evidence that a reasonably prudent person would have known, if he had been thinking of all of the conditions and circumstances surrounding him while he was engaged in his work, that plaintiff was in a perilous posi-

tion while doing the work that he was doing when he is said to have been injured and that his mind was temporarily ingrossed in his work, and that he was then and there unmindful, for the time being, of the danger of being injured by the caving in or falling of the material called 'base' and that said material caved in and fell upon him and injured him before he knew or realized it was caving off or was about to fall and that the defendant had not guarded against injury to plaintiff at said time and place except by previously instructing plaintiff and others to perform their duties with care and to watch out and not get hurt, then in that event it is your sworn duty to find for the plaintiff and award him damages in such an amount as you may believe from the preponderance of the evidence he is justly entitled to recover in this case.''

This instruction is argumentative and is further erroneous in making momentary forgetfulness a basis of liability. All that is required of a master is that he exercise reasonable care for the safety of his servants, and when he has done so he is not liable for injuries to his servants caused by momentary forgetfulness of the ordinary hazards of the employment. Momentary forgetfulness may in an emergency excuse negligence on the part of a servant, but it does not create liability where the master has exercised the required degree of care for his safety.

The appellee also requested and was granted two instructions which directed the jury to render a verdict for him if it believed from a preponderance of the evidence that appellant was guilty of any negligence which contributed to appellee's injury. These instructions were erroneous in that they permitted recovery to be based upon any negligence, whether charged in the declaration or not. The right of recovery should have been limited to the negligence charged in the declaration.

For the errors pointed out in these instructions, the judgment of the court below will be reversed, and the cause remanded.

Reversed and remanded.