ALBERT *v.* DOULLUT & EWIN, INC., *et al.*

(Division B. Jan. 24, 1938. Suggestion of Error Overruled March 7, 1938.)

[178 So. 312. No. 32987.]

**E. F. Coleman,** of Purvis, and **Adam H. Harper,** of New Orleans, La., for appellant.

Davis & Davis, of Purvis, for appellees.

Argued orally by **E. F. Coleman**, for appellant, and by **T. W. Davis, Sr.** and **Jr.**, for appellees.

**Anderson, J.,** delivered the opinion of the court.

This action was brought in the circuit court of Lamar county by appellant for the wrongful death of Ezell Mc-Williams; the suit was by appellant, as administratrix of his estate, against appellees. At the conclusion of the trial, the court, on appellees' motion, directed a verdict and judgment in their favor. From that judgment this appeal is prosecuted.

On the first of April, 1937, the appellee Doullut & Ewin, Inc., was engaged by contract in the construction of a public highway from the town of Purvis to the city of Hattiesburg in this state. The right of way for the highway was 100 feet wide. It had to be cleared of all trees, brush, and other debris. Appellee employed a large number of men to clear the right of way. They were divided into crews consisting of from 12 to 15, each crew was under the direct supervision and control of a foreman whose duty it was to see that the work was properly done, and to that end supervise and control the work. Each crew was divided so that some would be sawing down the trees standing on the right of way, while others would be chopping the trees already sawed down into lengths, and others would be piling up and burning the brush and other debris. At the time of his death McWilliams was working with one of these crews under the direct control of appellee O'Neal as foreman. He had been selected, and it was his duty, to pick up and pile the brush and debris for burning, and while so engaged a tree was sawed down by other members of his crew which fell upon him and killed him.

The contractor had established a rule for the protection of the men by requiring that warning be given when a tree was about to fall, so that the workers in its reach could get out of the way. One or the other of the men

sawing down the tree was required to cry "timber" or "tree falling." According to the evidence for appellant no warning was given when the tree which killed McWilliams was felled. It was charged in the declaration that the contractor promulgated this rule so that the men working in the crew would have an opportunity to seek a place of safety; that McWilliams relied on this rule being complied with; and that at the time of the felling of the tree he was busily engaged about his duties and oblivious of the danger. The evidence tended to sustain these allegations.

There was direct evidence on behalf of appellees that a warning was given, while on behalf of appellant several witnesses testified that they were from 20 to 100 feet of where the tree was being felled and if any warning was given by the sawyers they did not hear it, and if it had been given they would have heard it. Appellees contend that this evidence was negative and for that reason not sufficient to make an issue for the jury, as against the positive testimony that the warning was given. Testimony that a fact did not occur, given by witnesses so situated that in the ordinary course of events they would have heard or seen the fact had it occurred, is sufficient to warrant a jury in finding that the fact did not occur. 1 Wigmore on Evidence (2 Ed.), section 664; 23 C. J. 40; Yazoo R. R. Co. v. Lucken, 137 Miss. 572, 102 So. 393; Gulf R. R. Co. v. Carlson, 137 Miss. 613, 102 So. 168; Grantham v. Gulf R. R. Co., 138 Miss. 360, 103 So. 131; Gulf R. R. Co. v. Hudson, 142 Miss. 542, 107 So. 369; Columbus R. R. Co. v. Lee, 149 Miss. 543, 115 So. 782. We are of the opinion that it was an issue for the jury as to whether or not the warning was given.

It is sought to justify the judgment upon the ground that the failure of the sawyers to give the warning was the negligence of fellow servants, for which appellees are not liable. That contention is based upon a confusion of the fellow servant rule and the safe place to work rule. Whenever the master's work is complex and dan-

gerous, he should safeguard his servants by the adoption of approved methods and the promulgation of rules and regulations for the safety of his employees, and he does not discharge his duty by the mere promulgation of the rules for the guidance of his servants—he is bound to see that such rules are enforced. This cannot be delegated so as to relieve the master. The negligence of a delegate or representative is deemed the failure of the master. Upon such rules, when necessary, and upon their enforcement, depends in a large measure the character of the place to work—the safety of the place. Gulf Refining Co. v. Ferrell, 165 Miss. 296, 147 So. 476; Ross v. Louisville R. R. Co., 178 Miss. 69, 172 So. 752; Edwards v. Lumber Co., 113 Miss. 378, 74 So. 284; Yazoo R. R. Co. v. Smith, 150 Miss. 882, 117 So. 339; McLemore v. Rogers, 169 Miss. 650, 152 So. 883; Eagle Cotton Oil Co. v. Pickett, 175 Miss. 577, 166 So. 764, 766; Tatum v. Crabtree, 130 Miss. 462, 94 So. 449; 18 R. C. L., p. 573, section 80.

In the Eagle Cotton Oil Case the court used this language: "However, danger does not create liability, but the failure of the master to exercise ordinary or reasonable care to protect his servants from the dangers necessarily incident to their employment does create liability, and we think that under the facts here in evidence it was the province of the jury to say whether or not, in adopting a plan or method of performing the work, and in providing a safe place to work, the appellant exercised reasonable care." The fellow servant rule does not come into play where the dangers are manifest and in the very nature of the work are necessarily recurring. Such dangers are a part of the surroundings and place of work. The master is required to use reasonable care to guard against them by warnings, guards, or otherwise. Here the felling of the trees was constantly recurring, probably many times during the day—it was a necessary part of the work and was dangerous to those in reach; it constituted a part of the

method and place of work. In order to make the place reasonably safe it was the duty of the master by warnings or otherwise to guard against the danger of the falling trees. That duty was nondelegable, therefore the failure of the fellow servant to carry it out was a failure of the master.

To require such rules, however, the work must be "complex and dangerous." It is argued that the work was not complex; that all McWilliams had to do was look out for himself when a tree began to fall. The fault with that position is that whenever a tree was being felled the minds of the crew not engaged in felling the tree would necessarily be directed away from their own work. Often they would be a considerable distance from the tree. That fact might make it difficult for the servant to know when the tree "pitched to fall." We think the dangers and complexities of the situation were such as to require warnings.

Reversed and remanded.