Garland **MELTON**, Plaintiff-Appellant,

v.

**MELTON PLANTING COMPANY, A Mississippi Corporation, Defendant-Appellee.**

No. 84–4807.

United States Court of Appeals, Fifth Circuit.

Nov. 26, 1985.

---

Ralph E. Chapman, Clarksdale, Miss., Guthrie T. Abbott, Oxford, Miss., for plaintiff-appellant.

W.O. Luckett, Jr., Dan T. Bing, Clarksdale, Miss., for defendant-appellee.

Before GARZA, TATE, and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge.

In this Mississippi diversity case, plaintiff Garland Melton appeals from the district court's granting of defendant Melton Planting Company's motion for summary judgment. Finding genuine issues of material fact, we reverse the judgment of the district court and remand for further proceedings. The portion of the district court's judgment denying plaintiff Garland Melton's motion for partial summary judgment is affirmed.

## I.  BACKGROUND

On October 12, 1982, plaintiff Garland Melton, a resident of Arkansas and twenty-five years of age, was employed by Melton Planting Company (Melton Planting), a Mississippi corporation. Melton Planting is a farming operation which grows cotton, rice, soybeans, and wheat on land in Tunica County, Mississippi.[1]

As part of its harvesting operation, Melton Planting owned two combines, a John Deere 6620 and a John Deere 7720. During harvesting, Melton Planting employees were required periodically to clean rice out of the combines in order to salvage the rice which stuck in the machine. Two methods for cleaning the combines were available. One method required the workers to remove the clean-out door at the rear of the combine and to rake the rice down manually through the clean-out auger. During this first method of cleaning out the combine, both the combine's engine and the auger were turned off. While this method involved little or no danger, Melton Planting foreman Hugh Campbell testified that it takes about thirty minutes to get the rice out when the machine is not turned on. The second method required the employees to leave the combine's engine running in order to use the combine's auger. With the combine engine running in neutral, one man manually raked the rice in the hopper down to the auger arm while another man held a bucket beneath the opened clean-out door. The operator of the combine pulled the lever to activate the combine's auger. The record indicates that no oral or hand signal to turn the auger on was given between the combine operator and the employee with the bucket; instead, the employees indicated they merely looked to see when the other employee was ready. The employees also put their hands into the auger to clean out any rice that remained. The rice was emptied into a truck, and the procedure then would be repeated. Melton Planting foreman Hugh Campbell testified that this procedure for cleaning out the rice from the combine with the engine running was performed about five times of the fifty times per harvest year and was used whenever the grains of rice were damp, as they were on the day of the accident.

On the day of the accident, October 12, 1982, the plaintiff Garland Melton was working with Roger Newsome and Garland's brother, Richard Melton. The three

---

1.  Melton Planting's president is Charles Melton, who is the half-brother of the plaintiff Garland Melton. Charles Melton also owns fifty percent of Melton Planting; the other half is owned by a man named Penn Owens.

Melton Planting employees were under the supervision of Melton Planting's foreman Hugh Campbell. At approximately eight in the morning following a rain shower, Melton Planting's combines were brought out of the fields to a shed for cleaning. Melton Planting foreman Hugh Campbell testified that he removed the clean-out door to the Model 7720 John Deere combine. At that time, the plaintiff Garland Melton and Newsome were preparing to clean out the Model 6620 combine. Campbell called Newsome and the plaintiff over to the Model 7720 combine and instructed all three employees to clean out the Model 7720 combine first. The foreman Campbell then left the shed to return to the field. Although Campbell did not state specifically which of the two methods was to be used, Campbell testified that he expected the employees to use the method which required the combine engine to be running so that the auger could be used in cleaning out the combine.[2]

The three employees then commenced to clean out the Model 7720 combine by the second of these two methods. Richard Melton worked as the operator while the plaintiff Garland Melton and Roger Newsome were to catch the grain in a bucket as it fell out. According to Richard Melton's affidavit, Newsome was inside the combine hopper raking rice down to the auger. The plaintiff Garland Melton was standing on the ground beside the machine. Richard Melton saw Roger Newsome returning from the truck with an empty bucket. Apparently thinking it was time to activate the auger, Richard Melton climbed into the cab of the combine. Unknown to Richard Melton, the plaintiff Garland Melton had placed his hand inside the machine to knock some rice out. Richard Melton turned on the auger and only looked toward the rear of the combine when he heard the plaintiff

Garland Melton yelling. The plaintiff's right arm was pulled into the auger, resulting in the loss of that arm.

It was undisputed in the trial court proceedings that Melton Planting had promulgated no rules or procedures for cleaning out the combine with the engine running. Indeed, it appears from the record, as it is currently presented, that the method the employees used in cleaning out the combine may have developed simply through past practice as the workers went about their tasks.

On motions for summary judgment, the district court granted summary judgment in favor of defendant Melton Planting. The district court held (1) that Melton Planting had not breached its duty to provide a reasonably safe place to work; (2) that Melton Planting fulfilled its duty to use reasonable care in furnishing the plaintiff Garland Melton with reasonably safe equipment with which to work; (3) that Melton Planting had no duty to promulgate rules governing performance of the clean-out procedure; and (4) that Melton Planting neither ordered nor implicitly approved the employees' use of the more dangerous method of cleaning out the combine. Having rejected all of plaintiff Garland Melton's theories as to employer liability, the district court held that the sole proximate cause of the accident was the negligence of the plaintiff Garland Melton and that of his fellow servant, Richard Melton. Accordingly, the district court held that plaintiff Garland Melton could not recover as a matter of law under Mississippi jurisprudence and granted summary judgment in favor of defendant Melton Planting. Plaintiff Garland Melton timely appealed.

## II. EMPLOYER LIABILITY

The district court noted that "[t]he material facts in this case are undisputed."

---

**2.** In the Memorandum of Decision prepared by the district court, the court only stated, "Campbell did not specify which method the employees were to use to clean the combine.... The plaintiff and his fellow employees chose to clean out the combine while it was running becuase they had seen Campbell clean it that way on a previous occasion." Record at 114. Reading the record in the light most favorable

to the plaintiff, however, it appears that Campbell expected the employees to use the latter method, that he would have been angry with them if they had not done so, and that the plaintiff Garland Melton thought it was necessary to use the latter method in order to keep his job. *See* Record at 56–59 (Campbell deposition); Garland Melton Deposition at 54.

Record at 113. This Court has noted that a grant of summary judgment is appropriate only where it appears from the record, considered in the light most favorable to the party opposing the motion, that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Galindo v. Precision American Corp.,* 754 F.2d 1212 (5th Cir. 1985). Even assuming that the underlying historical facts are not in dispute, a motion for summary judgment should not be granted unless the record reveals no evidence from which reasonable persons might draw conflicting inferences about the underlying historical facts. *See Prinzi v. Keydril Co.,* 738 F.2d 707 (5th Cir.1984). Indeed, this Court has noted that use of summary judgment is rarely appropriate in negligence cases, even where the underlying historical facts are not in dispute. *Davidson v. Stanadyne, Inc.,* 718 F.2d 1334 (5th Cir.1983).

In the instant case, the district court held that the sole proximate cause of plaintiff Garland Melton's injury was his own negligence and that of his fellow servant, Richard Melton. Record at 121. The district court noted that under the fellow servant doctrine recognized in Mississippi, the employer Melton Planting incurred no liability based on the negligent act of plaintiff's co-worker, Richard Melton. *See, e.g., Strange v. Mercury Marine, Inc.,* 194 So.2d 208, 210 (Miss.1967). The district court therefore concluded that plaintiff Garland Melton was not entitled to recovery as a matter of law.

While a Mississippi employer may incur no liability where the combined negligence of the plaintiff and a co-worker is the sole proximate cause of the injury, the employer cannot escape liability on the basis of the fellow servant doctrine where "the negligence of the master ... mingles with that [of] one who stood in the relation of a fellow servant to the servant receiving the injury." *Thompson v. Thomas,* 219 Miss. 552, 557, 69 So.2d 238, 240 (1954). Here the district court examined each of plaintiff's theories of liability against the employer Melton Planting and concluded that

none of the theories presented a genuine issue of material fact. This opinion undertakes a similar examination. While the plaintiff Garland Melton presented five theories of liability, an analysis of these theories indicates that plaintiff's theories focus on two areas: (1) the defendant Melton Planting's duty to promulgate rules and regulations; and (2) the defendant's instruction to use (or acquiescence in the use of) the more dangerous method of cleaning out the combine.

### A. Duty to Promulgate Rules and Regulations

Under Mississippi law, an employer is required to promulgate rules governing the performance of their employees' duties

> only where, in addition to being dangerous, the work of the [employees] is also complex, and the conditions which may arise are uncertain and obscure. If the work is simple in character and free from complexities, the [employer] is under no obligation to adopt rules. In other words, where the danger is apparent to all, and the duty of the [employees] to avoid such danger is manifest, no rules are required.

*Tatum v. Crabtree,* 130 Miss. 462, 94 So. 449, 451 (1923). In the instant case, there is no question that the work performed by plaintiff Garland Melton, Richard Melton, and Roger Newsome was dangerous. Furthermore, the deposition testimony indicates that defendant Melton Planting prescribed no method for cleaning out the combine with the auger running. The question, then, is whether there are material issues of fact as to whether the work was "complex" such that defendant Melton Planting had a duty to promulgate rules and regulations.

■ Defendant Melton Planting argues that the work of cleaning out the combine with the engine running was not complex since Garland Melton and his fellow employees were well aware of the danger the auger presented and since they therefore knew to look out for each other in turning

on the auger and cleaning out the combine.[3] An examination of the record and this Court's questioning at oral argument, however, reveals that the record is not as clear on this point as defendant's contention suggests. While Richard Melton testified that he could see that his brother Garland's arm was caught in the auger when he turned and looked after he heard Garland's cries, it is not clear whether Garland could see Richard's use of the auger lever or that Richard could see the position of Garland's arm before turning the auger on.[4]

Further, the following analysis indicates that the evidence in the limited record on this appeal is insufficient to lead to a conclusion as a matter of law that the work of cleaning the combine was not "complex," as developed under Mississippi law. In interpreting the definition of "complex," Mississippi case law reminds the Court that the rules governing an employer's liability for injuries to an employee must be given a practical, rather than technical, application. *Stewart v. Kroger Grocery Co.,* 198 Miss. 371, 21 So.2d 912 (1945).

In keeping with this practical construction, Mississippi cases provide that the employer has no duty to promulgate rules and regulations "in the simpler employments [where to require them] would only embarrass [the employees] without useful effect." *Tatum,* 94 So. at 451 (quoting *Olsen v. Northern Pacific Lumber Co.,* 100 Fed. 384, 386 (1900)). In *Tatum,* the plaintiff's co-employee rolled timber down a ramp while the plaintiff was adjusting the skids on the ramp even though the co-employee could plainly see the plaintiff. The rolling timber struck the plaintiff. The court held that there was no duty incumbent upon the employer to promulgate a rule to forbid employees from throwing timber on the ramp while a co-employee was on the ramp. "No rule or regulation was necessary. There was only one course to pursue...." 94 So. at 451. "Without any rules, the [co-employee] knew exactly what his duty was." *Id.* at 452. This rationale of "one course to pursue" is evident in other early Mississippi cases. *See Eagle Cotton Oil Co. v. Pickett,* 175 Miss. 577, 166 So. 764, 767 (1936); *Buckley v. United Gas Public Service Co.,* 176 Miss. 282, 168 So. 462, 465 (1936); *Masonite Corp. v. Stevens,* 201 Miss. 876, 30 So.2d 77, 80 (1947).

In contrast, Mississippi cases recognize that, where the [employer] places his [employee] at a place and in a character of work which exposes the [employee] to hazards against which the [employee] cannot, by the use of due care, protect himself and at the same time do his work, the [employer] must then take reasonable care to warn the [employee] or to erect guards, if either of these are reasonably practicable, and, if not, the [employer] must so order and control the method of the work as to obviate the danger, so far as reasonably practicable.

*Federal Compress Co. v. Craig,* 192 Miss. 689, 7 So.2d 532, 535 (1942) (quoting *McLe-*

---

**3.** *See Strange v. Mercury Marine, Inc.,* 194 So.2d 208 (Miss.1967) (plaintiff injured when co-employee suddenly advanced throttle in motorboat while plaintiff was standing in boat; fellow servant doctrine precluded recovery); *Buckley v. United Gas Public Service Co.,* 176 Miss. 282, 168 So. 462 (1936) (gas company employee injured when struck by truck while crew engaged in removing truck from mudhole; fellow servant doctrine precluded recovery); *Eagle Cotton Oil Co. v. Pickett,* 175 Miss. 577, 166 So. 764 (1936) (pile of fertilizer mixture broke up as a result of work of plaintiff's co-employees and fell on plaintiff while plaintiff had back turned to weigh wheelbarrow on scales; employer had no duty to promulgate rules as work not complex; jury question as to whether employer provided reasonably safe place to work in adopting plan or method of performing work); *Tatum,* 94 So. at 450 (plaintiff's co-employee rolled piece of timber down skids and injured plaintiff even though plaintiff and co-employee in full view of each other; no duty to promulgate rules).

**4.** At oral argument, counsel for defendant argued that the plaintiff Garland Melton "maybe" or "probably" would have known that Richard Melton was ready to turn on the auger if he had looked to see Richard move from the hopper to the combine cab. Although such a statement of fact, if proven at trial, would certainly be relevant, the issue appears to be in dispute at this juncture.

more & McArthur v. Rogers, 169 Miss. 650, 152 So. 883, 884 (1934)). In *Craig*, the court held that the employer had a duty to promulgate and enforce a rule that employees should shout a warning before dropping a bale of cotton from the top of a tier to the floor. The court relied on an earlier Mississippi case, *Albert v. Doullut & Ewin*, 180 Miss. 626, 178 So. 312 (1938). In *Albert*, the court held that the jury could conclude that defendant employer breached a duty to enforce a rule requiring sawyers to shout a warning when the sawyers felled a tree or brush. The evidence indicated that the sawyer failed to shout such a warning, and a tree struck and killed the administratrix's decedent, McWilliams. More recently, the Supreme Court of Mississippi held that the employer breached a duty to promulgate and enforce rules and regulations when the employer failed to require the plaintiff to wear goggles when welding. *Cherry v. Hawkins*, 243 Miss. 392, 137 So.2d 815, 817 (1962). The court noted that the employer's "duty becomes more imperative as the risk increases, as do the acts and precautions required by ordinary prudence." 137 So.2d at 817.

Thus, two lines of cases have developed under Mississippi law. At this procedural juncture, it cannot be said as a matter of law that plaintiff Garland Melton's case falls into the first line of cases where the employer has no duty to promulgate rules. Rather than presenting a situation in which the employees had "one course to pursue," the cleaning out operation required the coordination of three employees. While the employees appear from the record to have developed a somewhat informal procedure of turning the auger on when one employee returned from the truck with an empty bucket, no employer rules appear in the current record as to the crucial time of when the auger was to be turned on. Where "a reasonably safe plan ... is reasonably available and practicable, it is the nondelegable duty of the [employer] to see to it that such a plan or method is established...." *Craig*, 7 So.2d at 535. The present record establishes no such rule or reason why any such rule was not reason-ably available. Thus, it appears that the plaintiff may well be able to establish at trial that defendant had a duty to promulgate rules and regulations and that a jury may conclude that the defendant breached its "nondelegable duty to use reasonable care to furnish the [employee] a reasonably safe place in which to work." *Southern Package Corp. v. Mitchell*, 109 F.2d 609, 610 (5th Cir.1940) (applying Mississippi law).

### B. Employer's Use of Dangerous Method

Plaintiff Garland Melton also argues that defendant Melton Planting is liable in that the defendant negligently instructed him to clean out the combine in a dangerous manner where a safer alternative was available. *See Eagle Cotton Oil Co. v. Pickett*, 166 So. at 766 (jury question as to whether employer exercised reasonable care in adopting plan or method of doing work). As noted above, at least two methods were available to clean out the combine. The first did not require the use of the combine engine and auger when running. The second method required running the combine and auger. Alternatively, plaintiff Garland Melton argues that, even if foreman Campbell did not instruct its employees to use the more dangerous method, defendant Melton Planting acquiesced in the customary use of the more dangerous method.

The district court rejected plaintiff's theory. The court held that Campbell did not specify the method of cleaning out the combine and that the employees voluntarily chose to use the more dangerous method. *See Masonite Corp. v. Graham*, 199 Miss. 833, 25 So.2d 322, 323 (1946) (employer not liable where employees voluntarily chose more dangerous method). As to whether the employer acquiesced in the customary use of the more dangerous method, the district court pointed to Campbell's testimony that the procedure was used only five times out of the approximately fifty cleanings performed during harvest. "This shows that use of the more dangerous clean-out procedure was the exception rather than the custom." Record at 120. Finally, the district court noted that foreman

Campbell's personal use of the procedure was immaterial since Campbell was acting in the capacity of a fellow servant at the time of performing these tasks.

■ Upon examination of the record, we find material issues of fact. As noted, *see supra* n. 2, both Campbell and the plaintiff Garland Melton testified that they understood that the more dangerous method was to be employed. From this, a jury may conclude that Campbell, acting in his supervisory capacity, ordered the employees to use the more dangerous method.[5] Further, Campbell's testimony states that the more dangerous method was the standard means of cleaning out the combine whenever the rice was wet. Record at 73. Thus, Campbell's testimony indicates that the more dangerous method was customary. This customary use also creates a question of fact for the jury. *See Hardy v. Turner-Farber-Love Co.*, 136 Miss. 355, 101 So. 489 (1924) (defendant's acquiescence in employee's use of dangerous method created question for jury as to whether employer intended employee to use more dangerous method).

Finally, defendant Melton Planting's reliance on the fellow servant and dual capacity doctrines with respect to foreman Campbell is misplaced. While Campbell may have acted as a fellow servant when engaging in cleaning operations himself, Campbell clearly acted as a supervisor in ordering employees Garland Melton, Richard Melton, and Roger Newsome to clean out the combine. *See Barron Motor Co. v. Bass*, 167 Miss. 786, 150 So. 202 (1933). Campbell's past use of the procedure is relevant in interpreting what method Campbell intended the employees to use at the time of giving the order. *See Eastman Gardiner Hardwood Co. v. Chatham*, 168 Miss. 471, 151 So. 556, 557 (1934) (in determining meaning of orders, one must look to the "reasonable and fair inference to be drawn from all the language used").[6]

Thus, we conclude that the district court erred in finding as a matter of law that there was no issue of material fact on plaintiff's theory of negligent instruction.

### III. CONCLUSION

Since material issues of fact remain on plaintiff's theories of liability, the district court's summary judgment in favor of defendant Melton Planting must be reversed. Plaintiff urges this Court to reverse the district court's denial of his motion for partial summary judgment on the issue of liability. Our preceding analysis, however, demonstrates that material issues of fact remain on plaintiff's theories of liability as well. Thus, we cannot hold that the plaintiff is entitled to summary judgment.

The judgment of the district court granting defendant's motion for summary judgment is reversed; the district court's denial of plaintiff's motion for partial summary judgment is affirmed. The case is remanded to the district court for further proceedings not inconsistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

---

**5.** Indeed, Campbell testified that he anticipated the employees would do it by this method "[b]ecause the last time it was clean[ed] out that was the way I did it,' Record at 58, and that he "would get on to them about it" if the employees had not used that method. *Id.* at 59.

**6.** Nor do we perceive that the employee must be directly threatened with termination if he does not perform the dangerous task in order to recover. *See Oakes v. Mohon*, 208 Miss. 478, 44 So.2d 551 (1950).