## GULF, M. & N. R. Co. *v.* KELLY.

(Division B.   Jan. 18, 1937.   Suggestion of Error Overruled March 1, 1937.)

[171 So. 883.   No. 32473.]

**Welch & Cooper,** of Laurel, and **J. V. Gipson** and **Thos. L. Bailey,** both of Meridian, for appellant.

Reily & Parker, of Meridian, and **W. A. Strong, Jr.,** of Louisville, for appellee.

Argued orally by **Ellis B. Cooper**, for appellant, and by **Marion W. Reily**, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

The appellee was plaintiff in the court below, and brought suit against the appellant for injuries received by appellee on December 4, 1934, while in the service of appellant. The injuries occurred while appellee was using an acetylene torch in cutting metal while removing a wreck on the track which had occurred some distance north of Louisville, Miss. The torch was alleged to be defective, in that a nut therein was improperly packed, permitting oxygen to leak from the tank, which, coming in contact with the greasy gloves worn by the appellee, caused an explosion by which he was injured. His hand, from his wrist down, was burned severely, his teeth loosened, and his hearing was impaired.

It appears that eight months prior to the injury in question, the appellee was using this acetylene torch in another wreck, found it to be defective, and turned it over to the proper person for repairs, notifying him of its defective condition; the company having another servant whose duty it was to inspect and repair such torches. This servant in repairing this particular torch, packed it with dry asbestos, not using glycerine, as was the custom, and it was alleged that the torch was submerged in water, a process by which it is claimed that,

if there is escaping oxygen, bubbles will form. After being so repaired, this torch was placed in a locker on the caboose which had been set aside for wrecker service, and it appears not to have been inspected thereafter, so far as the proof shows, between that date and the date of appellee's injuries.

There was testimony to the effect that the proper way to pack a nut was to saturate asbestos with glycerine; that it was used by manufacturers in the making of such torches; and that it was much safer when so packed, this being generally recognized. There was testimony to the effect, also, that it was proper to inspect such torches at least once or twice a month to see whether there were leaks, and that when oxygen came in contact with grease there were liable to be explosions. It was also shown in the testimony that, in working around engines and in removing wrecks from the track, there is always more or less grease, and that it is necessary to wear gloves in cutting metal with such torches when the weather is cold, as working with iron in cold weather benumbs the hands.

In using such torches, it appears that oxygen and acetylene were conducted through cylinders, which when lighted produced an intense heat, which heat is necessary to cut and sever metal.

There was testimony in this case showing that the appellee was sent to the wreck, and reached there during the night, and that he was not the person to whom the duty of inspecting torches had been delegated, but that he had used this torch on the night prior to his injuries, and it did not then explode.

There was conflict in the testimony as to whether there would be an explosion unless the oxygen was confined under pressure and in contact with grease, there being testimony to the effect that it would not, and also testimony to the reverse, and also testimony that the instructions given to users of such torches were to avoid contacting oxygen with grease, and to—"Be sure there is

no oil or grease on hands or gloves. . . . If a jet of oxygen strikes oily cloth, spontaneous flame may occur. Never allow oil or grease of any kind to come in contact with oxygen. It is very dangerous.''

There was also testimony as follows:

"Q. If the oxygen should escape because of an improperly packed valve, Mr. Shaw, state whether or not the oxygen would come in this sleeve or holder, or come out of that hole there? A. It should go out one of these places, here or here.

"Q. And you put your hand on places near the lever and above the lever here? A. Yes sir.

"Q. That is all right. I wanted the record to show it. And then if a man had his hand on here, and working like you say this has to be used, and the oxygen escapes by that valve, as you have shown, and come in contact with this sleeve that comes out here, and he had his hand tight over it that way, what would happen? A. If it was the proper mixture, it would cause a combustion, and where it was not, it might not.''

Another witness testified as follows:

"Q. Now if a man were doing that work, and holding that implement in the usual way, and had grease on his hands, and oxygen came through this hole here, and he had his hand over it that way, holding it, what would take place? A. Well, he might have an explosion.

"Q. What causes that explosion, Mr. Porter? A. Oxygen, compressed oxygen coming in contact with grease. . . .

"Q. Now if I have grease on my hand, and oxygen would come in contact with it, and I would press down on it, would there be danger of an explosion? A. It is dangerous, yes sir.''

The testimony is voluminous as to whether there would or would not be explosions in circumstances as described.

The main contention in this case is whether, upon this

testimony, the court should have granted the peremptory instruction to find for the appellant. The testimony is too lengthy to be set out in extenso, and we do not deem it necessary, but, after a careful examination of all the testimony, we are of the opinion that it was sufficient to support the verdict for the appellee.

The appellant moved the court to allow it to make a test demonstration of the torch outside the courthouse, in the presence of the jury, stating that it would not be necessary to go more than 50 feet from the courthouse, and that the experiment could be made in 20 or 30 minutes. The appellee objected thereto, the court sustained the objection, and overruled the motion of appellant, which is assigned as error.

Without going into a discussion of the power of the court to so do, we are of the opinion that it committed no error, and that the experiment, if made, would not, under the testimony in this case, be a demonstration of the facts one way or the other, it being shown by the proof in this case that an explosion might occur under one circumstance, and not under another, and the proof also shows that the torch had been in the possession of the appellant from the time of the injuries until the trial, and the appellee had no opportunity or, at least, did not, during this time, make any examination of the torch. An experiment outside the courtroom should never be authorized, unless it be shown, beyond a reasonable doubt, that the conditions at the time of the trial are identical with those at the time of the injury, and each party has a proper opportunity to ascertain these facts before the experiment is made.

. Furthermore, the permitting of such requests for experiments outside the courtroom would injure the power of this court to properly review the evidence, and to pass upon its weight, as to whether the overwhelming weight of the evidence is in favor of one party or another. In the very nature of things, this court could not see and understand exactly what was done. It is largely anal-

ogous to a view by the jury which we recently considered in the case of Great Atlantic & Pacific Tea Co. v. Davis, 171 So. 550, decided on January 4, 1937. This court in the case of Cotton Mill Products Co. v. Oliver, 153 Miss. 362, 121 So. 111, 112, discussed this question, saying that: "With reference to the second contention in the assignment of errors, at the beginning of appellee's testimony, when it was suggested that the jury repair to the mill to view the scene, appellant requested the court. in advance of this trip to its mill, and before appellee had concluded his testimony, to allow appellant to have a man demonstrate, with an oil can, how the machinery should be oiled. This request for a practical demonstration at the mill was refused by the court, which refusal is assigned as error. We think it was entirely proper for the court to decline to allow this practical demonstration, for the reason that it was entirely within the discretion of the court to confine the scope of the testimony to the purposes and spirit of the statute, which permits a jury to view the scene; and in this case it would have been unnecessary at any rate, because the proof in this case abundantly shows that the oiler, performing this duty some 5,000 times a day, had been able to do so without serious mishap until this occasion. We do not think it would have been fair to the appellee to permit this demonstration to the jury by a person specially prepared for this particular occasion, diverting the mind of the jury from the usual and ordinary way of doing this work from hour to hour, and from day to day; consequently, we think there was no error."

In the case at bar, we are therefore of the opinion that the court below did not err in overruling the motion.

The appellant complains of the following instruction: "The court charges the jury for the plaintiff that it was the duty of the defendant in this case to use reasonable care to see that the cutting torch with which plaintiff was required to work was reasonably safe for such serv-

ice, and if you find, from a preponderance of the testimony, that the defendant negligently failed to perform this duty, that as a proximate result thereof, the plaintiff was injured, then it will be your duty to return a verdict for the plaintiff.''

It is contended that this instruction leaves any defect in the torch to negligence; that there was a specific defect pointed out in the pleadings, and to this the instruction should be limited.

We find no objection to this instruction, as it announces properly the general rule, and the testimony shows that there were two methods by which an explosion could occur, one from a defect in packing a valve, and one from a cracked cylinder, from both of which leaks could develop. The jury are supposed to be able to apply the general rule to the specific facts of cases. As announced in the instruction, all that was asked was that the appellant should use reasonable care so that the cutting torch with which appellee was required to work would be reasonably safe. What is reasonable care, in each case, would be largely determined by the nature, condition, and extent of the danger of the instrumentalities furnished a servant to work with. In E. L. Bruce Co. v. Brogan, 175 Miss. 208, 166 So. 350, the court announced that the greater danger calls for the greater degree of care which must be taken by the master in furnishing instrumentalities with which to work.

We think the instructions in the case at bar complained of sufficiently laid down the law for the guidance of the jury, and constitute no reversible error.

It is next assigned as error that the verdict of $15,000 is excessive.

There is evidence to the effect that plaintiff suffered loss of the use of his left hand; that same would be permanent; that his hand was atrophied, and sensitive to touch by reason of the injured nerve; that he had so suffered for more than twelve months; that his hearing

was injured by the explosion; and that he had to have five teeth removed.

It is true that appellant introduced a witness who testified that appellee drove a car, on an occasion, some 175 miles, and that, in shifting gear with his right hand, he placed his left hand on the steering wheel.

The physician who treated him testified that, from his examinations and X-ray pictures, it was his opinion that the appellee could not use his left hand at any time, and that this condition would be permanent. It would, perhaps, be less painful if his hand were entirely removed, as that might promote his general health and reduce his suffering.

In A. & V. Ry. Co. v. Dennis, 128 Miss. 298, 91 So. 4, for the loss of an arm the plaintiff recovered a judgment for $25,000, which was reduced to $18,000 by this court.

It seems to us that the injuries in the case at bar approximate that injury, if they do not fully equal it.

We do not think the verdict is so excessive as to evidence passion, prejudice, or partiality; consequently, the judgment of the court below is affirmed.

Affirmed.