## Scott Burr Stores Corporation *v.* Morrow.

(Division A. April 25, 1938. Suggestion of Error Overruled June 20, 1938.)

[180 So. 741. No. 33167.]

Watkins & Eager, of Jackson, for appellant.

Barnett, Jones & Barnett and **John E. Stone,** all of Jackson, for appellee.

Argued orally by **Pat Eager**, for appellant, and by **Arden Barnett** and **Ross R. Barnett**, for appellee.

**McGehee, J.**, delivered the opinion of the court.

The only question presented for decision by this appeal is whether the court below erred in refusing to grant a peremptory instruction on behalf of the appellant.

The appellee was seriously injured when he fell to a depth of from 16 to 20 feet into an unguarded elevator

shaft from the second floor of the appellant's mercantile store, in the city of Jackson, where he was employed as stock man to open up and carry merchandise from the stock room down to the first floor of the building as the same was needed to replenish the sales counters in the store. In going to the stairway from the place where he obtained the merchandise, it was necessary that appellee should pass within a few inches of the elevator shaft, where a wooden gate was provided for the purpose of closing the entrance or opening thereto. This gate worked up and down in grooves, and would usually be raised about 6 feet from the floor when freight was to be unloaded at the second floor. The top part of the gate would then frequently become wedged or stuck in the grooves and could not be lowered without considerable difficulty, so as to close the opening into the elevator shaft—in fact, it was often necessary for the elevator operator to be assisted by some other employee in order to prize the gate loose and pull it down. This condition had existed for several months; and, according to the testimony of some of the witnesses for the appellee, the manager of the store had personally assisted them occasionally in getting the gate prized loose in order to close the opening from the passageway into the elevator shaft. Frequent complaints had been made to him regarding the matter; and the proof disclosed, although not without conflict, that the gate was left up about 50 per cent. of the time, due either to the difficulty experienced in trying to close it when it was wedged or stuck or to the negligence of the employees in failing to close it at such times as it would not be wedged or stuck in the grooves; that the manager had instructed the employees to keep the gate closed when the elevator was not at the second floor; that it required three or four minutes for the manager to close the gate that day shortly after the accident, and he had made no effort to remedy the difficulty in order that it might be closed without difficulty.

The declaration alleged that Dave Boykin, who the evidence shows was a fellow servant, was the last person to use the elevator before the appellee received his injury, and that he carelessly and negligently failed to close the guard gate in question; but the declaration further alleged, in substance, that the appellant owed the appellee the duty of furnishing and maintaining a gate to the elevator that could be raised and lowered without great difficulty, and that the appellant knew, or should have known by the exercise of reasonable care, that a gate which would become wedged and so tight when raised that it could not be lowered without great difficulty was likely to be left open by employees on account of such difficulty in lowering the same; that the "gate was often negligently left open, due to the difficulty in closing the same and to the negligence of the said Dave Boykin"; that appellant failed to furnish and maintain sufficient light in the place where the appellee was required to work, and especially along the passageway near the elevator shaft; and, further, that the negligence of the said Dave Boykin, as well as the defective condition of the guard gate and the failure of the appellant to provide sufficient light near the elevator, all contributed to rendering the place where the appellee was required to work not reasonably safe; and alleged a failure to exercise reasonable care in that behalf.

In support of these allegations the appellee introduced, among other witnesses, the local manager of the store of appellant. No testimony was offered by the appellant as to the condition of the premises, and such conflict as appears in the testimony arises, therefore, out of the evidence offered by the appellee. There was no direct testimony as to whether Dave Boykin left the elevator shaft open on the occasion complained of because of any difficulty experienced by him in trying to lower it at that time, or as to whether his failure to close the gate was due solely to his negligence; but we are of the opinion that the evidence was sufficient to warrant the

jury in finding that the appellant knowingly permitted, even though it may have been under its protest, a negligent habit, on the part of the employees, of leaving the gate to the elevator shaft raised and opened a great deal of the time, either on account of the difficulty experienced by them in closing the gate, or on account of their negligent failure to close the same; that allowing this negligent practice to continue rendered the passageway not reasonably safe for the use of the appellee and others when passing near the elevator shaft in the performance of their duties, and constituted a breach of duty on the part of appellant in that respect, regardless of whether the failure to keep the opening of the elevator shaft guarded was due to the difficulty of lowering the gate or to the negligence of a fellow servant.

In the recent case of Albert v. Doullut & Ewin, Inc. et al., Miss., 178 So. 312, the master had promulgated a rule requiring its employees to give a warning in their work of felling trees for a sufficient time to enable their fellow servants to get to a place of safety before each tree was ready to fall. This warning was required to be given by those engaged in felling trees under penalty of losing their employment for a failure so to do. One of the servants was killed by a tree, due to the failure of two of his fellow servants, who were sawing the tree down, to give the warning. The writer of the opinion presided at the trial in the lower court and gave a peremptory instruction on behalf of the employer on the theory that the fellow-servant rule applied. However, this court, in reversing the case, held that a master does not discharge his duty by the mere promulgation of rules for the guidance of his servants, but that the master was bound to see to it that such rules were enforced; that this duty could not be delegated so as to relieve the master; that the negligence of the fellow servant was deemed the failure of the master. Under this pronouncement of the law, it was likewise the duty of the appellant in the case at bar not only to demand and insist that the

opening into the elevator shaft should be kept closed when the elevator was not at the second floor, but there also existed the duty of exercising reasonable care to see to it that it was kept closed. The failure to do so under the circumstances testified to amounted to a failure to exercise reasonable care in the matter of furnishing the appellee a reasonably safe place in which to work. In other words, if the doctrine of furnishing the servant a reasonably safe place to work applies, the fellow-servant rule has no application. We do not have here an instance of a fellow servant having failed in only one isolated instance to carry out the instructions of the master for the safety of his fellow employees (even if that fact would relieve the master of liability or not amount to a failure to exercise reasonable care), but we have a case here where fellow servants, with the knowledge of the master, had engaged in the negligent habit of leaving the elevator shaft unguarded in such a manner as to show actual knowledge on the part of the master that the place of work was not reasonably safe.

In the case of Sea Food Co. v. Alves, 117 Miss. 1, 77 So. 857, 858, it was said: " 'The duty of the master extends to preventing the premises upon which he requires the servant to work from containing dangerous pitfalls, holes, obstructions, or other mantraps, in which his servant is liable, unguardedly, to fall, while his mind is absorbed in the duties of his employment' or during momentary forgetfulness of the presence of danger."

In Finkbine Lumber Co. v. Cunningham, 101 Miss. 292, 57 So. 916, 919, the defendant requested an instruction to the effect that if the jury "believe from the evidence that the plaintiff reached above the saw for the oil can, and in so doing slipped upon a small block or piece of wood, and fell upon the saw, and that the fact that such piece of wood was on the floor was due to the negligent failure of some other employe to sweep it away, then there is no liability on the part of the defendant." The instruction was erroneous, and the court

said: "This instruction seeks to eliminate the nondelegable duty of the master to keep this place in a reasonably safe condition. The failure of an employe charged with this duty to keep it in that condition was the failure of the master. It was one of the master's nondelegable duties—one that he could not shift to any other employe." And the court further held that the duty of the master to furnish the servant with a reasonably safe place in which to work was a continuing duty, that is to say, the duty of the master in that regard is not satisfied by putting the place in a reasonably safe condition once and then allowing it to become dangerous while the servant is at work, but he must exercise reasonable care to keep it reasonably safe at all times.

In Gulf, M. & N. R. Co. v. Brown, 143 Miss. 890, 108 So. 503, 504, the court, although holding that there was no liability in the case, reaffirmed the rule to the effect that "where the reasonably safe place to work doctrine applies, the fellow-servant doctrine has no application, because of the rule that the duty of the master in that respect is nondelegable." In Thompson on Negligence, paragraphs 4856, 4863, the rule is announced that "If the negligence of the master . . . mingles with that one who stood in the relation of a fellow servant to the servant receiving the injury; and if the negligence of the master, . . . was a proximate or efficient cause of the injury—the master will be liable and will not be allowed to escape liability on the ground that the injury also proceeded from the negligence of one for whose conduct he was not answerable. A different statement of the doctrine is to say that, in order to relieve the master from liability for an injury to one of his servants the negligence of a fellow servant must have been the sole cause of the injury, and not commingled or combined with the negligence of the master or his representative." See, also, Masonite Corp. v. Lochridge, 163 Miss. 364, 140 So. 223, 141 So. 758; Ross v. Louisville

& N. R. Co., 178 Miss. 69, 172 So. 752; Adams v. Hicks, Miss., 178 So. 484.

It is urged by the appellant that the proof fails to show any causal connection between the defective condition of the guard gate and the failure to lower the same and close the opening into the elevator shaft on the particular occasion complained of. That is true, unless such causal connection can be reasonably inferred from the natural human reaction of a servant to the great difficulty of closing the gate and the consequent temptation to take chances that no harm will result. As to whether the intervening failure of the fellow servant to close the gate might reasonably have been anticipated from the fact that it could be closed on many occasions only with extreme difficulty, so as not to interrupt the original negligence of the appellant, would ordinarily be a question for the jury. However, it is not necessary that we rest the decision of this case on the affirmative of that proposition. The evidence, although conflicting, was sufficient to go to the jury on the question as to whether the appellant had exercised reasonable care to discharge its nondelegable duty of keeping the elevator shaft closed, or to provide sufficient light in that immediate locality to avert the danger of employees falling into the same. Of course, the semidarkness of the place, as testified to by the appellee, and the alleged failure to provide, or the refusal in the interest of economy to permit the use of, sufficient light, is material only to show the degree of care required on the part of the appellant to see to it that the elevator shaft was kept closed when employees were required to pass close by the opening in the discharge of their duties.

We are of the opinion that the refusal of the peremptory instruction was proper, and that the judgment should be affirmed.

Affirmed.