CHERRY, d.b.a. SUN-RISE RICE FARMS *v.* HAWKINS

No. 42177 February 19, 1962 137 So. 2d 815

*Denton & Gore,* Marks, for appellant.

*Ben M. Caldwell,* Marks; *William R. Bradley,* Clarksdale, for appellee.

ETHRIDGE, J.

Appellee Ralph Hawkins filed this tort action in the Circuit Court of Quitman County against his employer, J. C. Cherry, doing business as Sun-Rise Rice Farms. Plaintiff charged that he received injuries to his eye while helping a welder, who was employed by defendant as foreman and was using an electric torch; and that the cause of his injuries was the negligence of defendant in failing to use reasonable care to furnish him with a reasonably safe place to work and reasonably safe tools and appliances. The jury returned a verdict for plaintiff for $4,500. This appeal is from the judgment based thereon.

Hawkins was injured on December 21, 1960. The suit was filed on January 11, 1961. The original declaration charged that "M. C. Cooper" was Cherry's foreman; that Cooper was using a "blow-torch" while welding metal on a boat; and that plaintiff was injured on or about December 15, 1960. Apparently the declaration intended to make Cooper a defendant, along with Cherry. Thereafter N. C. Cooper filed a motion to quash process on him, averring he was not a defendant. This motion was sustained and N. C. Cooper discharged. On March 1, 1961, the date of trial, the court permitted plaintiff to amend his declaration to correct the first initial of Cooper, to change the date of injury to December 21, 1960, and to aver that Cherry's foreman was using an electric torch. These amendments were allowed. There was no error in overruling defendant's subsequent motion for a continuance, on the ground there were material changes in the cause of action. The stated amendments were slight and were not such as to prejudice defendant. This Court will not reverse the denial of a continuance unless it is satisfied that prejudice resulted. Miss. Code 1942, Rec., Sec. 1520. The amendments were

not material ones and could not have worked any injustice. ██ ██ Moreover, appellant did not preserve this point on its motion for a new trial, so, even if it were otherwise of merit, it cannot be raised here.

The two principal issues pertain to liability and damages. On the first, certain basic principles are pertinent: ██ ██ A master has the duty to use reasonable care to furnish his servant with a reasonably safe place in which to work, and with suitable and reasonably safe instrumentalities to do his work. ██ ██ The master is not an insurer of the safety of the instrumentalities or places to work, furnished his servant, but he is liable for negligence for the failure to exercise due, ordinary, reasonable care in those respects. 56 C. J. S., Master and Servant, Secs. 201-202, 205. ██ ██ The master is not required to furnish the newest, safest and best machinery, appliances, and places for work. His obligation is met when he furnishes such as are reasonably safe and suitable for the purposes had in view. Ibid., Sec. 207.

██ ██ The master's duty becomes more imperative as the risk increases, as do the acts and precautions required by ordinary prudence. Stewart v. Kroger Grocery Co., 21 So. 2d 912; Gulf M. & N. R. Co. v. Kelly, 178 Miss. 531, 171 So. 883 (1937); 56 C. J. S. 907. ██ ██ Hence, when the servant is working on or with machinery which is inherently dangerous, the master is required to exercise such reasonable care in respect of the installation, maintenance, and operation of such machinery, as is commensurate with the dangers involved. 56 C. J. S., Master and Servant, Sec. 215. It is immaterial that the servant knows as much about a complicated instrumentality as the employer, as far as the duty of the latter to furnish safe instrumentalities and appliances is concerned. Ibid., Sec. 215; Miss. Power & Light Co. v. Merritt, 194 Miss. 794, 12 So. 2d 527 (1943); Hercules Powder Co. v. Tyrone, 155 Miss. 75, 124 So. 74, 475 (1929).

The master does not discharge his duty, in the method of using tools and instrumentalities, by the mere promulgation of rules for the guidance of his employee. He is bound to use reasonable care and diligence to see that the rules are enforced and complied with. Scott Burr Stores v. Morrow, 182 Miss. 743, 750-751, 180 So. 741 (1938); Albert v. Doullut & Ewin, Inc., 180 Miss. 626, 178 So. 312 (1938); United Novelty Co. Inc. v. Daniels, 42 So. 2d 395 (1949).

On the issue of liability, appellant contends that he was entitled to a peremptory instruction, and, alternatively, the verdict is against the overwhelming weight of the evidence. In reviewing a jury verdict, we must accept as true the evidence favorable to appellee and all reasonable inferences from it.

Hawkins said Cooper, his foreman, directed him to hold a short piece of iron, which Cooper was welding onto the bottom of a boat with an electric welding torch. Cooper wore a helment on his head, but plaintiff had no protection over his eyes and face. Plaintiff was standing up holding the piece of iron, when some hot pieces of metal from the welding flew in his eye. It is not clear whether one or both eyes were hit. Hawkins said that no welding helmet or other equipment for protection to his face was furnished him, and there was nothing else in the shop which he could put over his eyes and face for protection. He knew welding was dangerous, but he had never seen any goggles around the shop.

James Smith, an employee of defendant, said he was present when Hawkins received the "flash burn from the welding". However, there were available nearby on the acetylene welding rig two pairs of goggles. Smith said he had been instructed to protect his eyes when welding. The goggles would not protect one from flash burns in electric welding, but they would protect against hot metal flying from an electric torch. Plaintiff denied

he had been instructed by defendant to use a protective covering for his eyes while helping a welder.

For defendant, Cooper stated that he wore a helmet while using an electric torch. Hawkins had no goggles on, although there were two pairs hanging in the shop and available. Cooper said that one working as a helper to an electric welder could use goggles to prevent both flash burns and flying metal. He had instructed Hawkins several times to wear the goggles when he was helping, although he did not direct him that day to wear them. Brooks, an employee of Cherry, also said the goggles were in the shop and available to plaintiff.

With these contradictions in the testimony, it was a jury issue as to whether defendant made available in the shop goggles for plaintiff to wear, and whether they were a reasonably safe and suitable protection for that type of work. Plaintiff said no such devices were present. The jury had the right to accept his testimony. Moreover, plaintiff asserted he had not been instructed to wear goggles. Defendant's foreman, Cooper, admitted that he had not directed plaintiff that morning to put them on. So assuming goggles were available, it was not sufficient for the employer to merely promulgate the rule that they should be worn. Cherry had the further duty to use reasonable care to see that the rules are enforced and complied with. If goggles were available, the jury could have concluded also that Cooper should have directed Hawkins to put them on. Cooper admitted that he did not do this on this occasion. Moreover, an additional issue was whether the goggles were adequate protection in electric welding.

The instructions submitted the issues to the jury. It accepted plaintiff's testimony that he was not furnished by defendant any protective equipment; and found that he assisted the foreman, on the latter's direction, without any adequate protective appliances; that this negligence of the employer by his agent was the proximate

cause of plaintiff's injuries. Although on liability the case is a rather close one, we are unable to say that the jury was not warranted in finding negligence and proximate cause.

 With reference to the amount of damages awarded plaintiff, $4,500, we conclude that the evidence is wholly insufficient to support a verdict in that amount, and it is grossly excessive. Plaintiff testified that he had considerable pain and discomfort from the injuries to his eye or eyes; and his evidence established a small loss of earnings up to the time of trial. During one week after his injury, he worked in Arkansas driving heavy equipment called a "scraper", at $140 a week, which was more than double his weekly salary for Cherry. That job was still available for him, when his eyes permitted. His medical bills were $146.

Plaintiff made no complaint at the time of the accident. He said that one is not aware of such an injury until about four hours later, but this is improbable and unreasonable, in view of the extreme sensitivity of the eye and the impingement of hot molten iron on it. Plaintiff worked for several days after the injury. On December 26, he drove his car at least 110 miles. It was testified that, several days after the injury, Hawkins' eyes were red, watering, and bloodshot. The source of that condition and its nature are not revealed. Plaintiff said a doctor told him to wear glasses, but there is no evidence indicating a medical need for them, other than Hawkins' statement to that effect.

The evidence is ambiguous and indefinite with reference to future loss of earnings. Plaintiff offered no medical testimony, although he had been treated by three doctors. During the trial defendant offered as a witness Dr. Robert Sayle, but plaintiff claimed his statutory privilege and the court properly sustained the objection. Miss. Code 1942, Rec., Sec. 1697. An eye injury is one which particularly indicates the need for

expert medical testimony, where a plaintiff is seeking substantial damages, as here. The physiology and prognosis of eye injuries are complex medical questions. Plaintiff's evidence leaves the jury and the court completely in the dark as to the precise injuries to his eyes and the future effects, if any, of those injuries.

The burden was on plaintiff to show the extent of his injuries and loss of earnings. His evidence fails to meet that burden, gives no indication of the medical nature of the injuries to his eyes, and no possible measure of the loss of earnings. For these and the other stated reasons, the verdict is grossly excessive.

The judgment of the circuit court is affirmed on liability, reversed on the issue of damages, and remanded for a new trial on the issue of damages only. Supreme Court Rule 13. In the new hearing as to damages, all facts may be presented to the jury on the question of negligence of all parties, including plaintiff, and the jury will have the right to apportion damages under the comparative negligence statute. Vaughan v. Bollis, 221 Miss. 589, 73 So. 2d 160 (1954); Carlisle v. Cobb Bros. Construction Co., Inc., 238 Miss. 681, 119 So. 2d 918 (1960).

Affirmed on liability, and reversed and remanded for new trial as to damages only.

*McGehee, C. J.,* and *Kyle, Arrington,* and *Gillespie, JJ.,* concur.