348 So.2d 1031 (1977)
Sue DENTON
v.
STATE of Mississippi.
No. 49811.
Supreme Court of Mississippi.
August 10, 1977.
*1032 Johnston, Wright & Steinberger, Fielding L. Wright, Jr., Pascagoula, for appellant.
A.F. Summer, Atty. Gen. by Scherry J. LeSieur, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, SMITH and LEE, JJ.
SMITH, Presiding Justice, for the Court:
Sue Denton has appealed from her conviction of aggravated assault in the Circuit Court of Jackson County. For that offense she was sentenced to serve 18 years imprisonment.
The evidence was ample to sustain the conviction. The jury was justified in finding that she had shot and seriously wounded one Doug Lee without any lawful excuse or justification. The circumstances of the shooting, as disclosed by evidence apparently accepted by the jury, were substantially as follows: On an occasion preceding the shooting, Sue Denton's son had been "whipped" at pistol point in an encounter with "two blonde headed boys." He had vowed revenge and that he would "get even" if he saw them again. He inquired of Doug Lee, proprietor of a saloon or bar known as Mount Charlie's whether anyone answering the description of his assailants frequented his bar. Lee told him he knew of no such persons and warned him not to "bring trouble to Mount Charlie's". Sue Denton armed herself with a pistol and with young Denton and her husband went to Mount Charlie's on the following evening. A fight erupted between appellant's son and one Vaughn, and Lee, a large man, undertook to put the belligerents outside. In the process, the Denton boy hit Vaughn in the back of the head and, in the shoving that followed, Vaughn fell and Denton fell over him. Lee attempted to pick Denton up and at this point Sue Denton shot Lee. The bullet penetrated Lee's left arm, went through his left side, punctured the heart sac, ricocheted off a rib, pierced his liver and lodged in his pelvis. Miraculously he survived.
Sue Denton's defense was self-defense, her testimony having been to the effect that she had shot Lee as he swung at her with a "slap jack." This assertion is flatly contradicted by Lee and other witnesses. This was, of course, a factual issue for the jury.
There was ample evidence to justify a finding that, at the time Lee was shot by Sue Denton, he was neither attacking nor attempting to attack her, her son or anyone else. Moreover, it is apparent that appellant had armed herself, and with her son and husband, had gone to Mount Charlie's prepared for trouble.
Several alleged errors are assigned for reversal.
The first of these, that a term of court at which no grand jury was drawn had intervened between the impaneling of the existing grand jury and the return of the indictment against Sue Denton and therefore the indictment was void, is without merit and requires no further discussion. Ingram v. State, 330 So.2d 602 (Miss. 1976).
The second assignment is based upon the fact that the mother and sister of appellant victim, Doug Lee, had been drawn as members of the panel of prospective jurors. This was discovered and they were excused immediately by the trial judge. It does not appear that there was any communication between these two persons and other members of the panel and there is no showing or allegation of fraud. It is contended that the action of the trial court in denying appellant's motion for a continuance on account of this situation was error. This was a matter within the trial judge's discretion *1033 and it does not appear that he abused his discretion in refusing to grant a continuance under the circumstances.
Finally, there was no showing or offer to show on appellant's motion for a new trial that any prejudice to appellant resulted and, as a matter of fact, the question was not raised at all in the motion. Such a showing was necessary in order to preserve the question on appeal. Colson v. Sims, 220 So.2d 345 (Miss. 1969); Cherry v. Hawkins, 243 Miss. 392, 137 So.2d 815 (1962).
It is next argued that appellant was wrongfully denied the right to cross-examine as "hostile" a witness summoned both by the State and the defense.
Although there was a great deal of argument back and forth, it is abundantly clear that the total showing of the alleged "hostility" of the witness may be gathered from the following brief excerpt from the record:
BY THE COURT: Go ahead and lay your predicate.
BY MR. WRIGHT: That's what I'm trying to do, Judge.
Q. Now, prior to this hearing, were you called by the State of Mississippi to testify at the preliminary hearing against this lady over in City Court?
A. Yes, sir.
Q. Okay, so such testimony as you had would not be in the best interests of this lady. That's correct isn't it?
A. I don't understand what you mean.
Q. Well, you are not testifying for her, are you?
A. Not at all.
Q. Okay.
This does not meet the requirements laid down in Hooks v. State, 197 So.2d 238 (1967).
In the case of Hall v. State, 250 Miss. 253, 264, 165 So.2d 345, 350 (1964), we pointed out that "Witnesses may be cross-examined or impeached by the party calling them when they prove to be hostile. (Citing cases.) ... But" we said, "a proper foundation must be laid in order to impeach a witness. The party must first show that the evidence as given, has taken him by surprise and that the witness is hostile. The witness may then be asked if he has made contradictory statements out of court, the times, places and circumstances of the statements being described to him in detail. Underhill's Criminal Evidence, Vol. 1, Fifth Edition, p. 547." (197 So.2d at 239-240).
Despite defense counsel's contentions and the court's refusal to declare the witness a "hostile witness" (surprise was not claimed or shown) nevertheless defense counsel actually was permitted, as a matter of fact, to cross-examine the witness (for the better part of twenty pages in the record.) It is also clear that the contention on the part of appellant that this case in some manner involves the so-called "voucher rule" as condemned in Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) is not well taken.
The general rule, applied in this case with great liberality toward the defense by the trial judge, is stated in 81 Am.Jur.2d section 624 (1976):
Although there is some difference of opinion with regard to an adverse party called as a witness, a generally recognized exception to the rule that a witness may not be impeached by the party at whose instance he testifies exists in the case of a witness who is hostile or unwilling, or who by his testimony surprises the party calling him, provided the surprise is genuine and substantial. Where the party is thus surprised, he may, at least in the discretion of the trial court, show that the witness has made prior statements inconsistent with his testimony at the trial. However, one can impeach his own witness only when such witness proves to be a "hostile" witness, and a witness becomes "hostile" when he is called with the expectation that he will give testimony favorable to the calling party, but who thereafter proves to be unwilling or adverse, to the complete surprise of the calling party. Lapse of memory alone is not sufficient to justify cross-examination *1034 of one's own witness because it does not aid the opposing party.
A party should not be allowed to call an adverse witness for the sole purpose of impeaching him. Nor should a party be permitted to put a witness on the stand, knowing that his testimony will be adverse, and then claim surprise in order to impeach the witness. And if the "surprise" is not as to the facts elicited but rather that the court permitted the witness to testify on cross-examination as to a certain matter, such as allegedly known statements of a person since deceased, there is no abuse of discretion in refusing the party calling him permission to impeach the witness.
There appears to have been no reluctance on the part of the witness to answer questions addressed to him. If some of his testimony failed to support the defendant's claim of self-defense, and, in that sense, could be considered as "unfavorable," this alone did not make the witness a "hostile witness" within the rule.
It was not shown, nor was it offered to be shown on appellant's motion for a new trial, that there was any material fact which the defendant expected to show or believed that the witness knew or would testify to, that he was not asked about and about which he did not actually testify.
In order to preserve the question now attempted to be raised for consideration on appeal it was necessary to show that appellant was prejudiced. There was no effort to do so either in the course of the trial or on motion for a new trial. There is nothing in the record to indicate that, in the final analysis defense counsel was denied the right to question the witness as to any specific material matter and the record is silent as to what material fact the defense expected to prove by the witness that it was denied the right to prove. Moreover, a reading of the testimony given by the witness under examination, which in fact amounted to cross-examination, by defense counsel discloses that defense counsel was allowed to ask every question conceivable and that the witness was permitted to give in evidence his answers thereto. No attempt was made in the course of the trial or upon motion for a new trial to preserve the question, now sought to be raised, for consideration on appeal by showing that the defense was denied the right to question the witness on a material matter within the knowledge of the witness or to show what the witness's testimony would have been if interrogation had been allowed. The circumstances are entirely different and bear no resemblance to those condemned in Chambers and no prejudicial error was committed by the trial judge in this case.
AFFIRMED.
PATTERSON, C.J., INZER, P.J., and ROBERTSON, SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.