598 So.2d 1308 (1992)
Kenneth WATTS, Grace Watts Mitts and Southern Farm Bureau Casualty Insurance Co.
v.
John H. PENNINGTON.
No. 07-CA-59354.
Supreme Court of Mississippi.
April 22, 1992.
Kenneth Watts, Grace Watts Mitts, Eppes Watts & Shannon, Meridian, for appellants.
Laurel G. Weir, Thomas L. Booker, Jr., Weir & Booker, Philadelphia, for appellee.
EN BANC.
DAN M. LEE, Presiding Justice, for the Court:
This is an appeal from an order issued by the circuit court judge of Neshoba County, Mississippi, wherein the court sanctioned attorneys Kenneth Watts, Grace Watts *1309 Mitts, and their client's insurer, Southern Farm Bureau Casualty Insurance Company [hereinafter Farm Bureau]. The trial judge ordered a $900.00 sanction against both attorneys and Farm Bureau, jointly and severally, for failure to abide by the judge's deadline to either settle their case before the end of the pre-trial conference, or else risk the imposition of sanctions should the case be settled at some point after the pre-trial conference.
We find that this appeal begs an answer to a specific question. Can a circuit court adopt a deadline which directly contravenes a Uniform Circuit Court Rule regarding the amount of time which a party has to report a settlement to the court? After a review of the record, briefs, and arguments of counsel before this Court, we answer this question in the negative and reverse the order issued by the Neshoba County Circuit Court sanctioning Mr. Watts, Ms. Mitts and Farm Bureau.

FACTS
John H. Pennington was the plaintiff in the original lawsuit which arose from an automobile accident, but the accident itself is of little consequence to this appeal. The defendants were Michael Cloud, Virgil Brown, Henry Slaughter, and Harvis Carney. Defendant Virgil Brown never made an appearance in the suit, and defendants Henry Slaughter and Harvis Carney were dismissed from the suit by way of summary judgment. Thus, Michael Cloud[1] remained as the lone defendant with an active defense. Cloud's insurer was Farm Bureau, and pursuant to the terms of Cloud's policy, Farm Bureau retained attorneys Kenneth Watts and Grace Watts Mitts to represent Cloud in the defense of this suit.
The case was set for trial at the regular docket call of the Neshoba County Circuit Court for March 7, 1988, but it was later continued until March 17, 1988. On February 9, 1988, the trial judge sent a form letter to all attorneys of record which announced a pre-trial conference[2] to be held on February 29, 1988. This letter included several instructions, one of which was the following.
[I]n order to accomplish all the purposes of conducting the pre-trial hearings, each party and attorney should consider that that (pre trial conference) is the last opportunity to settle and that `the jury is in the box.' When the pre-trial and related matters are concluded, your case will either be settled or definitely for trial!

(Emphasis by the trial judge).
In strong, terse terms, the letter stated that the pre-trial conference would be the last opportunity to settle the case. The attorneys were instructed to either bring the parties to the conference or to have them available by telephone so that any settlement developments could be communicated between the parties.
As a matter of practice, Mr. Watts and Ms. Mitts notified Farm Bureau that a pre-trial conference was scheduled but did not inform them of the judge's "last chance to settle deadline."[3] Attorneys Watts and Mitts steadfastly maintain that it was their considered judgment and opinion that prior to the pre-trial conference, there was no liability on the part of their client. Specifically, they considered proximate cause to be a close question, and they also cited an independent intervening cause which they thought was detrimental to the plaintiff's case. They simply were not entertaining any thoughts of settlement. But for whatever reason, this view of no liability on the part of Mr. Watts and Ms. Mitts changed as a result of the pre-trial conference and from events learned on February 29 and March 1, 1988. Mr. Watts and Ms. Mitts *1310 formed a new assessment of the case. On March 2, 1988, Mr. Watts wrote a letter to Farm Bureau which advised of a recommendation to settle and requested authority to settle in the range of thirty to fifty thousand dollars [$30,000.00 to $50,000.00].
One of the claims adjusters[4] testified that Farm Bureau was completely unprepared for this new evaluation from Mr. Watts since they were previously under the impression that this was a no liability situation for their client, defendant Michael Cloud. Consequently, there were several phone calls between the attorneys and Farm Bureau during the next two weeks. The claims adjuster stated that when this new evaluation came in from Mr. Watts and Ms. Mitts, Farm Bureau forwarded the file to their general counsel for further review and advice  a second opinion, if you will. During this two week period between pre-trial conference and trial, the trial judge was kept informed of Farm Bureau's re-evaluation of the case, and the judge extended the deadline for settlement until 10:00 a.m. on Friday, March 11, 1988.
Mr. Watts testified that he informed the claims adjuster that the time in which to settle was, in fact, a limited time offer or else, "we would be exposed to sanctions." But the claims adjuster testified as follows: "We were told if we made any type settlement negotiations or it was settled anytime prior to 5:00 o'clock the day before trial, no sanctions."
After the claims adjusters and general counsel for Farm Bureau had studied the case further in the two week period following the pre-trial conference, all concurred in the settlement recommendations made by attorneys Watts and Mitts. The case was ultimately settled near the hour of 4:00 p.m. on Wednesday, March 16, 1988, the eve of trial. The court administrator was immediately notified, and then the judge was notified by telephone. The court acknowledges that it was notified of the settlement prior to 5:00 p.m. on the eve of trial, and this fact is not in dispute. However, since notification occurred after the deadline established by the court, the trial judge instructed Mr. Watts to appear in his chambers the next day at 8:45 a.m. for the consideration of sanctions.
The court issued an opinion and order on March 22, 1988. The judge originally sanctioned the defendant, Michael Cloud, and his insurer, Farm Bureau, for $900.00,[5] jointly and severally. The court stated the following as the reason for sanctions:
On many occasions, the attorneys for the Defendant, Cloud, both Ms. Mitts and Mr. Watts, were instructed to advise their client that upon final communication to the Court, that the Court considered the matter definitely for trial and that all settlement discussions were closed, and that the Court would consider and likely impose sanctions in the event of a change in that position.
Attorneys Watts and Mitts filed a motion to alter or amend the opinion and order. The judge noticed a hearing on the motion which was held in Carthage, Mississippi, on April 5, 1988. The hearing in Carthage accomplished very little. At the Carthage hearing, the trial judge simply ordered the attorneys to appear at yet another hearing on April 18, 1988, in Newton County and to bring with them the two claims adjusters with Farm Bureau who had worked on this file. Mr. Watts and Ms. Mitts appeared in Newton County for the second hearing and *1311 brought both claims adjusters with them as well as outside counsel from Farm Bureau. They also appeared with the defendant, Michael Cloud.
Following the hearing in Newton County, the trial judge determined that the defendant, Cloud, was truly an "innocent" party in all of this in that he was completely unaware of what was transpiring between his attorneys, Mr. Watts and Ms. Mitts, and his insurer regarding the lawsuit in which he was the named defendant. Therefore, the trial judge issued a supplementary opinion which removed Mr. Cloud from the obligation to pay the sanction. The final order imposed a $900.00 sanction, jointly and severally, on Mr. Watts, Ms. Mitts and Farm Bureau. The obligation to pay the sanction was stayed pending this appeal.
The named appellee in this case, John H. Pennington, has absolutely no interest whatsoever in this appeal. Mr. Pennington would not receive one dime of the $900.00 sanction, nor did he ask for the sanction. Mr. Pennington's attorney briefed and argued this case out of the ethical obligation of client loyalty.

ANALYSIS

WAS THE IMPOSITION OF SANCTIONS AGAINST ATTORNEYS WATTS AND MITTS AND SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY WARRANTED OR PERMISSIBLE, OR WAS THE SANCTION IN CONTRAVENTION OF THE UNIFORM CIRCUIT COURT RULES OR OTHERWISE NOT WITHIN THE AUTHORITY OF THE EIGHTH DISTRICT CIRCUIT COURT.
We approach this question with a clean slate, for our standard of review is de novo in passing on questions of law. Harrison County v. City of Gulfport, 557 So.2d 780, 784 (Miss. 1990); Cole v. National Life Ins. Co., 549 So.2d 1301, 1303 (Miss. 1989); Busching v. Griffin, 542 So.2d 860, 863 (Miss. 1989); Boggs v. Eaton, 379 So.2d 520, 522 (Miss. 1980).
Uniform Circuit Court Rule 2.13 grants discretion to the trial judge to assess costs against counsel who fail to notify the court of settlement before 5:00 p.m. on the day before trial.
RULE 2.13 FAILURE TO NOTIFY COURT OF SETTLEMENT
For failure of counsel to notify the Court of settlement of his case after it has been set down for trial before 5:00 P.M. on the day before the trial, or for failure to try his case, the Court may, in its discretion, assess all costs, including fees and mileage of jurors who have been notified and required to be present for the trial, against whichever party litigant it deems appropriate.
U.C.C.R. 2.13.
In essence, the learned trial judge's deadline modified 2.13 and provided for sanctions if the court was not notified of settlement prior to the conclusion of the pre-trial conference. The pre-trial conference is the "last opportunity to settle ... `the jury is in the box.' ... When the pre-trial and related matters are concluded, your case will either be settled or definitely for trial!" (Emphasis by the trial judge).
Local circuit courts may implement local rules provided such local rules are not inconsistent with the Mississippi Rules of Civil Procedure.
Rule 83. Local Court Rules.
Any court by action of a majority of the judges thereof may from time to time implement local rules and amendments thereto governing practice not inconsistent with these rules. All local rules shall be filed with the Supreme Court of Mississippi; thereupon, the Supreme Court shall publish and disseminate same to all members of the Mississippi State Bar.
Comment
Rule 83 guarantees the right of trial judges to prescribe local rules of court, not inconsistent with the Mississippi Rules of Civil Procedure, as may be necessary to implement the MRCP: see, e.g., MRCP 16 (pre-trial procedures); 40 (trial calendaring); and 78 (motion day). All local rules must be filed with the Supreme *1312 Court of Mississippi, which shall then publish and disseminate same to all members of the Mississippi State Bar.
M.R.C.P. 83 & Comment (1988 ed).
Rule 83 was amended effective March 1, 1989. Now, local rules must be filed and approved by this Court before becoming effective. See M.R.C.P. 83(b), (c) (1991 ed).[6] However, the 1989 amendment is of no significant consequence to this case for two reasons. First, although Rule 83 as it existed in 1988 only required local rules to be filed with the Mississippi Supreme Court for subsequent publication, both appellant and appellee concede that the Eighth Circuit had not filed such a rule with this Court in March of 1988. In fact, the Eighth District's "last chance for settlement" proposed rule was not even submitted to this Court until January 19, 1990.
Second, the Eighth Circuit Court District, as well as all other local courts, is bound by Uniform Circuit Court Rule 1.13.
RULE 1.13 NO ADDITIONAL LOCAL RULES
There shall be no additional local rules of circuit court unless adopted by a majority of the Circuit Judges Section of the Mississippi Conference of Judges and approved by the Supreme Court of Mississippi.

Uniform Circuit Court Rule [U.C.C.R.] 1.13 (1988 ed) (Emphasis added). See U.C.C.R. 1.13 (1990 ed) (same).
Unquestionably, a circuit court possesses inherent rule making power to enable it to effectively implement the Mississippi Rules of Civil Procedure. Rule 83 and its comment clearly provide for this. This is the common law as well. For example, a circuit court judge has authority to set a reasonable pre-trial cutoff date for the filing of demurrers, motions, etc., "consistent with the Uniform Criminal Rules of Circuit Court Practice, and to enforce the same." Hines v. State, 472 So.2d 386, 389 (Miss. 1985). A trial court has an inherent right to control its docket and is afforded "reasonable latitude" regarding the setting and continuance of cases. Liberty Savings & Loan Association v. Mitchell, 398 So.2d 208, 210 (Miss. 1981). See Boydstun v. Perry, 249 So.2d 661, 664 (Miss. 1971) (same).
We recognize that trial courts have the authority to control their dockets and to discipline attorneys and parties appearing before them for the orderly disposition of court business, but the action taken here exceeds that authority.
Rhodes v. Rhodes, 420 So.2d 759, 761 (Miss. 1982).
However, in the case sub judice, the circuit court exceeded its inherent authority to control its docket. Specifically, a lower court cannot unilaterally implement and enforce a settlement deadline which affords less time for parties to negotiate and settle a case before risking the assessment of costs than that allowed by Uniform Circuit Court Rule 2.13.
At the hearing which was held on the sanctions, the trial judge expressed the view that Uniform Circuit Court Rule 2.13 was inapplicable to this case and that M.R.C.P. 16, Pre-Trial Practice, was the source of authority for his settlement deadline. This view is unsupported in law and in logic. Rule 16 allows the trial judge to conduct a pre-trial conference. "In any action the court may, on the motion of any party, and shall on the motion of all parties to the cause, direct and require the attorneys for the parties to appear ... for a conference...." M.R.C.P. 16. The trial court is either mistaken in its interpretation of M.R.C.P. 16, or it reads extremely broad powers between the lines. Nothing in M.R.C.P. 16 or elsewhere allows a local *1313 court to unilaterally adopt a special "rule" which is inconsistent with a uniform rule regarding the reporting of settlement to the court.
It is undisputed that the Eighth District Circuit Court had not filed its settlement deadline rule in March of 1988 with the Mississippi Supreme Court. Uniform Circuit Court Rule 1.13 required Supreme Court approval for additional local court rules, and the Mississippi Rules of Civil Procedure [M.R.C.P. 83] required local rules to be filed with this Court and disseminated to the Bar by publication. Uniform Circuit Court Rule 2.13 allows parties to settle cases up until 5:00 p.m. on the eve of trial before risking the imposition of COSTS, which typically would be unavoidable incident to a jury panel reporting for duty. In this case, the trial judge responded by imposing SANCTIONS which allegedly included costs and a fine for general inconvenience.
For the reasons stated in this opinion, we reverse and vacate the order of the Neshoba County Circuit Court which sanctioned attorneys Watts and Mitts and Southern Farm Bureau Casualty Insurance Company. Appellants are taxed with all costs of this appeal.[7]
REVERSED AND ORDER VACATED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN and PITTMAN, JJ., concur.
BANKS, J., concurs by separate written opinion.
McRAE, J., dissents by separate written opinion.
BANKS, Justice, concurring in part:
I concur in the result reached by the majority because, in my view, the letter directive of the circuit court does not rise to the level of an order from which sanctions may flow for violation. No order was ever entered and no rule, local or otherwise, had been promulgated at the time of the events herein. In the absence of either an order or a valid rule, no sanctions should flow.
The majority holding that Uniform Circuit Court Rule 2.13, regarding imposition of costs for failure to announce settlement prior to 5 p.m. on the day before trial, limits our trial courts to that time limitation in the control of their docket goes too far. While the rule may prohibit the adoption of a contrary local rule, in my view, our trial courts are free to modify that rule, by order, in the context of the circumstances present in a particular case.
McRAE, Justice, dissenting:
This is a case where two attorneys and their insurance company client have been sanctioned for flatly ignoring an order of the Circuit Court of Neshoba County. The majority chooses to reverse the imposition of sanctions, holding that the local rule on which the order was based "directly contravenes" Uniform Circuit Court Rule 2.13. I dissent for two reasons: First, the lower court's order is perfectly compatible with Rule 2.13; secondly, attorneys should not be allowed to blatantly ignore a trial court's order.
One can more fully understand the setting by reviewing the following chronology:

Feb. 7, 1988 The trial court at regular docket call sets the case for
 trial on March 17, 1988.
Feb. 9, 1988 The trial judge sends a form letter to all attorneys of
 record announcing a pre-trial hearing on February 29, 1988.
 The letter also indicates that settlement should occur, if
 at all, no later than the end of the pre-trial hearing. The
 letter requires both sides to have their clients available
 in person or by phone to talk settlement (the real client
 for the defense being the non-party insurance company).
*1314 Feb. 29, 1988 The pre-trial conference takes place. Defense counsel
et seq. advises the court that his client is not present and asks
 for additional time to settle the claim. The following day,
 the trial court grants an extension. On grounds that defense
 counsel has not yet heard from its insurance company client
 regarding a suggested settlement, the trial courts extends
 the settlement deadline from day to day. The last deadline
 is set for March 11, 1988, and 10:00 a.m.
March 11, 1988 Defense counsel, having not yet heard from the insurance
et seq. company, fails to ask for an extension or to communicate
 with the judge in any way.
March 16, 1988 Defense counsel obtains authority from the insurance
 company to settle the case and enters a settlement at
 approximately 4:00 p.m. After settlement, defense counsel
 advises the court. The court clerk attempts to call all
 forty potential jurors but meets with limited success.
 Some jurors come to court the next morning. The March 17
 trial date is now open, and the trial judge has nothing to
 put in the time slot.

Rule 2.13 permits a trial court to impose sanctions "[f]or failure of counsel to notify the Court of settlement of his case after it has been set down for trial before 5:00 P.M. on the day before the trial." The Circuit Court of Neshoba County follows a local rule under which the trial court may require the parties to commit themselves to trial by the end of pre-trial conference. The majority apparently interprets the 5:00 deadline in Rule 2.13 as some sort of magic Rubicon before which a case can never be firmly committed to trial. Rule 2.13, however, is a general rule which a trial court may tailor to fit particular situations. The majority's interpretation renders the trial court's docket captive to the whim of the attorneys and the non-party insurance company. That is no way to run a court system. Here, the court ordered a pretrial conference, and all participated. Rulings of the court were made and counsel asked for additional time to talk settlement. The requested extensions were granted. Counsel had acquiesced to the judge's request that, "if you settle, do so now and don't wait until the last minute." Obviously, the court was trying to bring settlements to early fruition so that other matters could be docketed. The court was also attempting to prevent litigants from having to bear the needless expense of prolonged trial preparation in cases which eventually settle. The majority's rigid reading of the rule fails to consider the inherent authority of a trial court to control its own docket. See Walker v. Parnell, 566 So.2d 1213, 1216 (Miss. 1990); Palmer v. Biloxi Regional Medical Center, Inc., 564 So.2d 1346, 1367 (Miss. 1990); see also Liberty Sav. & Loan Ass'n v. Mitchell, 398 So.2d 208, 210 (Miss. 1981) (court is burdened with responsibility to expedite administration of justice). It also ignores the principle that attorneys are required to ascertain the local practices of courts. See Uniform Circuit Court Rule 1.12. A proper reading of Rule 2.13 does not preclude a trial court from setting a deadline earlier than 5:00 on the eve of trial, particularly where, as in the instant case, a pretrial conference has occurred in which the parties engaged in a frank discussion of settlement prospects and acquiesced in an expedited settlement deadline. The trial court was not concerned with whether this particular case was settled. The principle concern was docket control. The court's attitude was: "If you want to settle, fine; if you want to go to trial, fine. Just don't wait until the last minute to decide."
Where a trial court exercises its inherent power to facilitate prompt resolution of controversies, this Court should reverse only where the record reflects a clear abuse of discretion. Walker, 566 So.2d at *1315 1216; Watson v. Lillard, 493 So.2d 1277, 1279 (Miss. 1986). The record reveals no abuse of discretion here. As the trial judge explains in his thoughtful Reply to Petition for Extraordinary Relief:
This Court goes to the extreme in trying to get input from the lawyers even in setting court terms, the pre-trial hearing calendar, and docket setting/motion days... . I do not consult with local attorneys reluctantly nor do I consider it an inconvenience to do so, I enjoy trying to accommodate everyone that I possibly can in regard to convenient court terms, motion days, and even individual settings of cases. .. . It is true that I do require a pre-trial hearing under the authority of Rule 16 which provides:
the Court in its discretion may establish, by Rule, a Pre-Trial calendar on which such actions may be placed for consideration as provided herein. The Court may adopt such other procedures for implementing this Rule not in conflict therewith as may be expedient.
However, settlement subsequent to pre-trial will not necessarily be met with sanctions, although they are warned of the possibility of sanction. If both sides did not feel that there was an enforced procedure whereby both sides were required to be prepared for all matters which were the subject of pre-trial procedure, they would be an absolute waste of time. Therefore, the failure to be prepared to have a meaningful pre-trial hearing or procedure and to be prepared to make a final determination in regard to trial/settlement status might meet with sanctions. When circumstances change after the pretrial hearing date, or there are other reasons or excuses in regard to final answers on the pre-trial date, I have been and will continue to be tolerant and understanding.
(emphasis in original).
If the trial court had not expressly set an early deadline for settlement, then perhaps the imposition of sanctions prior to the Rule 2.13 deadline would have given rise to reversible error. In this case, however, the trial court delivered a specific order which did not conflict with the general rule set out in Rule 2.13. The attorneys disregarded the order at their own peril. We have held on many occasions that a trial court is permitted to impose sanctions where parties disobey or ignore its orders. See Edwards v. State, 594 So.2d 587 (Miss. 1992) (publication pending); Mississippi State Bar v. Odom, 566 So.2d 712, 718 (Miss. 1990); Stevison v. Woods, 560 So.2d 176, 180 (Miss. 1990); Common Cause v. Smith, 548 So.2d 412, 415 (Miss. 1989); Smith v. Smith, 545 So.2d 725, 728 (Miss. 1989); Cooper v. Keyes, 510 So.2d 518, 519 (Miss. 1987). In the instant case, the appellants clearly acquiesced in the setting of an accelerated settlement deadline, even to the extent of requesting and obtaining multiple extensions.[1] Yet despite the trial court's indulgence in granting the extensions, the appellant attorneys failed to take advantage of them and never even apprised the court that they would continue to engage in settlement negotiations past the extended deadline. By the time it learned of the settlement, the court had already spent needless time and effort preparing for what it rightly considered to be an obligatory trial. We should not countenance such flagrant and reprehensible disrespect for a court's effort to economize its limited resources. The imposition of sanctions should have been affirmed.
Periodically, we require our trial court judges to attend The National Judicial College. At these events, the judges are taught such principles as "A judge should be an activist," "A judge should require lawyers to comply with court orders," and "A judge should sanction lawyers who do not comply with court orders." See Course Materials for The National Judicial College, Civil Procedure Assignment I (1989). Perhaps *1316 we should stop sending our judges to these events if we are going to reverse them for putting in practice what they have learned.
Although I would affirm the trial court's imposition of sanctions for disregarding the court order and for failing to communicate with the court, by no means do I wish to imply that trial courts should force litigants to settle. To the contrary, I would simply hold that parties and/or their attorneys should be subjected to sanctions when they ignore court orders. Under the rule established by the majority, any attorney or party who settles after 5:00 p.m. on the eve of trial or during trial appears to be laid open to sanctions.
Farm Bureau, of course was not a "party" to these proceedings. This being the case, I agree that the reversal is proper to the extent sanctions were imposed on the insurance carrier. Even the appellant attorneys acknowledged in oral argument that they would bear the insurer's share of the sanctions if this Court chose to affirm.
In closing, I feel constrained to observe that this Court's refusal to recognize direct actions against third party insurers contributed to this controversy. One of Farm Bureau's claims adjusters, testifying in defense of the carrier's tardy settlement maneuvers, indicated that the company had been caught off guard. According to the adjuster, Farm Bureau assumed that its insured was clearly not liable and was unprepared for the defense attorneys' March "reassessment." The two-week delay between the pre-trial conference and the eventual settlement resulted. Had the insurer been directly involved in this case as a party defendant, the latent strength of the plaintiff's claim would not have taken the carrier by surprise, and the dispute now before us would never have arisen. Moreover, as a non-party, the insurer felt no compulsion to settle in a timely manner since it was not subject to sanctions. Had the insurer been made a party, it would likely have responded to defense counsel's settlement suggestions more expeditiously.
BANKS, J., joins in part with this opinion.
NOTES
[1] Cloud was the driver of a vehicle involved in the wreck. The vehicle was owned by Henry Slaughter.
[2] At oral argument, both parties acknowledged that they did not request a pre-trial conference for this case. The trial judge scheduled the conference on his own initiative.
[3] The trial judge attempts to make it clear that his mandate was not a threat to settle nor was he imposing sanctions for settling the case. His sanctions were for missing the deadline for a decision on making a final determination, settle or try the case.
[4] Two claims adjusters who had some involvement with the file attended the hearing on the sanctions by order of the judge. Both are licensed attorneys in Mississippi.
[5] The trial judge appears to have arrived at the $900.00 amount as follows. Fifteen (15) dollars times forty (40) jurors (which represents the per diem cost for jury service per juror) times two (2) for reimbursement for costs, expenses and general inconvenience to jurors plus an additional two hundred dollars ($200.00) as sanctions for the inconvenience to the clerk's office. This amount totals fourteen hundred dollars ($1400.00) but was discounted to $900.00 for reasons which are not apparent from the opinion or order.

Even though the $900.00 amount appears to have been based on some approximation for the cost of having a jury pool report for duty, the Court was advised at oral argument that the local court administrator successfully contacted potential jurors on the eve of trial and notified them that their attendance was not required.
[6] Procedure for Approval. All such local rules and uniform rules hereinafter adopted before being effective must be submitted to the Supreme Court of Mississippi for approval. Upon receipt of such proposed rules and prior to any approval of the same, the Supreme Court shall submit them to the Supreme Court Advisory Committee on Rules for advice as to whether any such rules are consistent or in conflict with these rules or any other rules adopted by the Supreme Court.
(c) Effective Date. From and after January 1, 1992, no uniform rules or local rules of any circuit, chancery or county court shall be effective unless hereinafter approved by the Supreme Court.
M.R.C.P. 83(b), (c) (1991 ed).
[7] At the oral argument on April 2, 1991, Mr. Walter Eppes, attorney and law partner for the appellants, argued the case on their behalf. Mr. Eppes stipulated that he would pay the costs of this appeal in the event that the case was reversed.
[1] It is noteworthy that the appellants did not argue, prior to the imposition of sanctions, that they were entitled to engage in settlement negotiations as late as 5:00 p.m. on the eve of trial. The attorneys unquestionably knew about the early deadline, as evidenced by the trial court's letter. In any event, Uniform Circuit Court Rule 1.12 requires attorneys to take the initiative in ascertaining the practices of local courts.