MAXWELL, J.,
 

 for the Court:
 

 ¶ 1. A Hinds County chancellor granted Natasha Sullivan a divorce from Gerard Sullivan based on his uncondoned adultery. Almost three weeks before trial, the chancellor allowed Gerard’s attorney to withdraw from the case, and Gerard represented himself. On the morning of trial, Gerard requested — for the first time — a continuance, which the chancellor denied based on “inconvenience to witnesses” and Natasha’s expense in securing a witness from Texas. Gerard contests the chancellor’s denial of the continuance and takes issue with the property distribution and award of attorney’s fees to Natasha. We find the chancellor’s denial of the last-minute motion for a continuance did not prejudice Gerard. We also find no manifest error in the chancellor’s distribution of the marital property. But we reverse and remand on the issue of attorney’s fees, based on a lack of evidence in the record of Natasha’s inability to pay her attorney.
 

 FACTS
 

 ¶ 2. Gerard and Natasha married on March 8, 2003. Prior to the marriage, Natasha purchased a furnished home from Gerard’s parents in Terry, Mississippi. Various vehicles and equipment remained on the property when Natasha took possession of the home. Other than Gerard’s time working on an oil pipeline in Texas, the couple resided in the Mississippi home.
 

 ¶ 3. Natasha purchased the house for approximately $103,000. After several refinances, she owed approximately $150,000 on the home. She testified that most of the monetary gain from refinancing went to pay Gerard’s medical bills, attorneys’ fees for his defense in a criminal matter, and vehicle payments. Before trial, the house appraised for $170,000. But Natasha desired to accept an offer of $150,000 to cover the debt.
 

 
 *538
 
 ¶ 4. Natasha and Gerard held separate bank accounts. Testimony indicated Gerard had a problem with cocaine and marijuana, but neither party offered evidence to show how much money he spent on drugs during the marriage. However, Natasha claimed she paid many of Gerard’s expenses from her separate bank account, including attorney’s fees related to a Louisiana drug charge. Natasha also paid $1,600 toward purchasing Gerard a camper, which he lived in while working in Texas.
 

 ¶ 5. At trial, one of Gerard’s co-workers, Dari Funkhouser, testified that while in Texas, he saw Gerard with another woman, Jessica Hunt. Though Gerard denied being romantically involved with Hunt, Funkhouser believed the two had a sexual relationship. He based his suspicions on the comments Gerard made regarding Hunt; Hunt staying overnight in Gerard’s camper; and Hunt and Gerard spending a weekend together in Tyler, Texas.
 

 ¶ 6. Natasha also suspected Gerard had been unfaithful. A few days before Gerard moved back to Mississippi, Natasha took off work and traveled to Texas to help him pack. She found Gerard at an Apple-bee’s restaurant talking to Hunt, who tended the bar there. When Natasha and Gerard returned to his trailer, Natasha discovered her pictures had been taken down. And she found a women’s hair “scrunchie,” an earring back, and what she believed to be seminal fluid on Gerard’s bed. She also claimed she discovered candle wax “everywhere.”
 

 ¶ 7. Gerard returned to Mississippi, but the marital problems continued. In April 2009, Natasha located Gerard’s truck at a casino in Vicksburg, Mississippi, where she saw him with Hunt and another couple. Natasha confronted Gerard, and he told her he was unhappy and wanted a divorce. Hunt assured Natasha the casino incident was the “first time” she and Gerard had been together. But in September 2009, Gerard admitted the affair to Natasha. He told Natasha the relationship with Hunt began a week before he moved back to Mississippi.
 

 ¶ 8. On April 30, 2009, Natasha filed for divorce based on Gerard’s uncondoned adultery. She also requested temporary support and sought possession of the house, the household goods, her vehicle, and temporary alimony. On May 26, 2009, the chancellor conducted a hearing on the request for temporary relief. She granted Gerard ten days to remove his farm equipment and personal property from the marital residence and divided possession of the vehicles between the parties. Gerard sought three additional days to remove his items. And the chancellor granted his request but ordered any property remaining after June 12 be disposed of as Natasha desired. The chancellor also set September 14, 2009, as the trial date.
 

 ¶ 9. The record indicates Gerard and his father removed some farm equipment and vehicles from the property. But they left several items, which Natasha removed at her own expense. At trial, she sought to recover from Gerard half of the approximately $5,000 in cleanup and removal costs.
 

 ¶ 10. On August 14, 2009, Gerard’s attorney filed a motion to withdraw as counsel. The chancellor initially denied the motion but ultimately allowed Gerard’s attorney to withdraw on August 25, 2009. The record does not indicate why Gerard’s attorney sought to withdraw, nor does it include the chancellor’s reasoning for letting him do so. Natasha’s counsel advised the chancellor that Gerard’s attorney had been unable to contact Gerard.
 

 ¶ 11. On the morning of trial, Gerard made an oral request for a continuance.
 
 *539
 
 The chancellor denied the request, and Gerard represented himself at trial. After hearing testimony, the chancellor found Gerard’s adultery caused the separation. The chancellor divided the property and awarded Natasha $2,650 toward the cleanup costs and $2,500 for her attorney’s fees. Gerard now appeals.
 

 DISCUSSION
 

 I. Continuance
 

 ¶ 12. Gerard first claims the chancellor erred in denying his motion to continue the trial. “The decision to grant or deny a motion for a continuance is within the sound discretion of the trial court and will not be reversed unless the decision results in manifest injustice.”
 
 Moore v. Delta Reg’l Med. Ctr.,
 
 23 So.3d 541, 549 (¶ 31) (Miss.Ct.App.2009) (citing
 
 Boone v. State,
 
 973 So.2d 237, 241 (¶ 13) (Miss.2008)).
 

 ¶ 13. The chancellor allowed Gerard’s attorney to withdraw on August 25, 2009. And Gerard did not seek a continuance until September 14, 2009, the morning of the previously scheduled trial. Natasha objected based on her expense in securing a witness from Houston, Texas. The chancellor denied the continuance because the request was made only “hours before trial” and would be an “inconvenience to witnesses.” We note that even though Gerard represented himself, he questioned Natasha’s witnesses extensively. The chancellor also aided Gerard in preventing the admission of hearsay.
 

 ¶ 14. We acknowledge that trial courts have “the inherent right” to control their dockets and are afforded reasonable latitude regarding the setting and continuance of cases.
 
 Dew v. Langford,
 
 666 So.2d 739, 746 (Miss.1995) (citing
 
 Watts v. Pennington,
 
 598 So.2d 1308, 1312 (Miss.1992)). We will not reverse the denial of a continu-anee unless we are satisfied that prejudice resulted.
 
 Id.
 
 (citing
 
 Cherry v. Hawkins,
 
 243 Miss. 392, 397, 137 So.2d 815, 816 (1962)). Our review of the chancellor’s property division indicates that Gerard was neither prejudiced in representing himself nor by the denial of the requested continuance. Thus, we find no manifest injustice resulted from the chancellor’s denial of the continuance.
 

 II. Property Division and
 
 Ferguson
 
 Factors
 

 ¶ 15. Gerard next takes issue with the chancellor’s division of property. When distributing marital property, chancellors are required to make factual findings concerning all applicable
 
 Ferguson
 
 factors.
 
 Id.; see also Kilpatrick v. Kilpatrick,
 
 732 So.2d 876, 881 (Miss.1999);
 
 Ferguson v. Ferguson,
 
 639 So.2d 921, 928 (Miss.1994). We will affirm the property division if “it is supported by substantial credible evidence.”
 
 Lowrey v. Lowrey,
 
 25 So.3d 274, 285 (¶ 26) (Miss.2009) (quoting
 
 Bowen v. Bowen,
 
 982 So.2d 385, 393-94 (Miss.2008)).
 

 ¶ 16. The chancellor’s temporary order awarded Natasha the home and furnishings, a 2006 Dodge Charger, a 2000 Ford F-250 pickup truck, and a 1992 Chevrolet Corvette. Gerard received a 2008 Ford F-250 truck, a 2003 Fleetwood Pride Camper, a Seag lawnmower, and a 1989 Chevrolet Corvette. The chancellor also awarded Gerard the game-room furniture. At trial, Gerard’s father testified that he gave the 1992 Corvette to Gerard as a gift. The record also reflects that by the time of the trial Gerard had already taken possession of his personal property along with a large television and dirt bike. It also appears Gerard had possession of a 1998 or 1999 Ford F-150 pickup truck, which like the 1989 Corvette he claimed to be inoperable.
 

 
 *540
 
 ¶ 17. In crafting the final property division, the chancellor awarded the 1992 Corvette to Gerard and the 1989 Corvette to Natasha. Aside from this lone change, the chancellor divided the property according to the prior temporary order, which had been decided while Gerard was still represented by counsel. The chancellor also ordered Natasha to make payments on her 2006 Dodge Charger, and required Gerard to pay the remaining debt on his property.
 
 [1]
 

 ¶ 18. The chancellor valued the marital home and household property at $170,000. Natasha purchased the house for $103,000 before she married Gerard. She refinanced several times and owed approximately $150,000. Because of current market conditions, the chancellor found it unlikely that any equity would be realized from a sale of the house. Thus, she awarded Natasha possession of the home and its furnishings for the purpose of accepting a then-pending offer of $150,000. There is no evidence in the record to show whether Natasha sold the house, and neither party addresses the current state of the house in their brief. Gerard claims the chancellor erred by denying him equity in the home if it does sell in the future. But in her bench ruling, the chancellor held that if Natasha chose to remain in the home, any equity realized from a future sale must be divided between the parties, which we do not find to be error under these circumstances.
 

 ¶ 19. Gerard also claims he should not be liable for the cleanup and removal of vehicles and heavy equipment left at the residence. The chancellor provided him ten days to remove these items and then extended that another three days. But Gerard did not remove all of his property during this time. Though he alleged Natasha had forced him to leave the residence, we note he failed to seek the chancellor’s assistance to resolve the matter. Further, the chancellor ordered Gerard to pay only half of the cleanup and removal costs, which we find reasonable.
 

 ¶ 20. Gerard finally argues the chancellor failed to consider the required
 
 Ferguson
 
 factors when dividing the property.
 
 [2]
 
 While chancellors are required to analyze each factor, this Court has held “providing a factual foundation is sufficient.”
 
 Palmer v. Palmer,
 
 841 So.2d 185, 190 (¶ 18) (Miss.Ct.App.2003). Though an equitable distribution of property does not necessarily mean equal division,
 
 [3]
 
 it appears the chancellor divided the property and debts as equally as possible.
 

 ¶ 21. The chancellor addressed the value of the home and equally divided the vehicles between Gerard and Natasha. There is no equity in the home, so neither party stood to receive a benefit from the proposed sale. The chancellor awarded both parties three vehicles, with each receiving one vehicle that is currently not working. The chancellor also considered
 
 *541
 
 the expenses caused by Gerard’s previous criminal activities, which Natasha paid by refinancing the house. Each party paid half of the cleanup costs associated with equipment removal from the residence. Further, the chancellor noted there are no minor children from the short marriage, and she adjusted the temporary order to award Gerard the 1992 Corvette. Though the chancellor did not specifically list and address each
 
 Ferguson
 
 factor, she indirectly addressed many of the relevant
 
 Ferguson
 
 factors when she recited her findings of fact and distributed the property. While this is not the preferred method, a sufficient factual foundation supports the property division, and we find no manifest error in the property division.
 

 III. Attorney’s Fees
 

 ¶ 22. The chancellor awarded Natasha $2,500 toward her attorney’s fees. Gerard challenges this award, claiming Natasha presented no evidence of her inability to pay her attorney’s fees. A chancellor’s decision to award attorney’s fees is reviewed for abuse of discretion, but attorney’s fees may only be awarded to a party who is financially unable to pay.
 
 Prescott v. Prescott,
 
 736 So.2d 409, 415 (¶ 26) (Miss.Ct.App.1999) (citing
 
 Magee v. Magee,
 
 661 So.2d 1117, 1127 (Miss.1995)).
 

 ¶ 23. In
 
 Prescott,
 
 this Court considered whether a chancellor’s failure to make specific findings of inability to pay was reversible error.
 
 Id.
 
 at 415-16 (¶¶ 25-32). We held that “[w]hen there is substantial evidence in the record to support such an award, we will infer that the chancellor determined that the recipient was unable to pay the fees.”
 
 Id.
 
 at 416 (¶ 31).
 

 ¶ 24. There is no evidence of Natasha’s inability to pay her attorney’s fees. The record indicates Natasha is employed by Baptist Medical Center, and Gerard is currently unemployed. There is no mention of Natasha’s current income. Further, there is no Uniform Chancery Court Rule 8.05 financial disclosure in the record. We are simply unable to find sufficient evidence to support an inference of Natasha’s inability to pay her attorney. Thus, we reverse the chancellor’s award of attorney’s fees to Natasha and remand this case for the chancellor to further consider whether the award of attorney’s fees is appropriate.
 

 ¶ 25. THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANT AND ONE-HALF TO THE APPELLEE.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ, CONCUR.
 

 [1]
 

 . There is no testimony regarding the amount of debt on these vehicles. It appears some debt is owed on the 2006 Dodge Charger, the 2008 Ford F-250, and the 2003 Fleetwood Camper. The record suggests there is no debt owed on the other vehicles.
 

 [2]
 

 . The
 
 Ferguson
 
 factors include: "(1) contribution to the accumulation of property, (2) dissipation of assets, (3) the market or emotional value of assets subject to distribution, (4) the value of assets not subject to distribution, (5) the tax and economic consequences of the distribution, (6) the extent to which property division may eliminate the need for alimony, (7) the financial security needs of the parties, and (8) any other factor that in equity should be considered.”
 
 Hults v. Hults, 11
 
 So.3d 1273, 1281 (¶ 36) (Miss.Ct.App.2009) (citing
 
 Ferguson,
 
 639 So.2d at 928-29).